Appeal of **CHATHAM & PHENIX NATIONAL BANK.**                    Docket No. 107.

Bank discount neither received nor accrued within the taxable year does not constitute income for that year.

A bank which, by the method of bookkeeping employed, includes in income discount neither received nor accrued within the year, should be permitted to change its method of accounting so as to correctly reflect its income, and proper adjustments should be made in the returns for prior years not barred by the statute. All amounts which constitute income within the year under the method of accounting employed must be returned for taxation in that year, even though a part thereof was improperly reported as income and the tax paid thereon in a prior year.

Submitted December 8, 1924; decided January 31, 1925.

*William Campbell Armstrong, Esq.*, for the taxpayer.
*Robert A. Littleton, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

From the evidence submitted herein the Board makes the following

FINDINGS OF FACT.

The taxpayer is a national bank duly organized under the laws of the United States and appeals from a proposed additional assessment of income and profits taxes for the year 1918 of $283,770.96, and for the year 1919 of $105,571.13, as appears from the Commissioner's deficiency letter mailed July 7, 1924. All of said proposed deficiency is in controversy except the sum of $22,746.86 which the taxpayer admits to be due for the year 1919, and arises from a change of method employed by the taxpayer in reporting its income from interest and discount on time loans.

For a number of years prior to January 1, 1918, the method of bookkeeping employed by the taxpayer in accounting for interest and discount on time loans was to credit discount at the time the paper was discounted directly to profit and loss and the total amount of discount thus credited was returned as income in the year in which the paper was discounted, whether or not the discount was collected or earned in the year in question. Discount on time loans was never

paid or collected in advance of payment of the paper and it was and is the custom of banks in the taxpayer's district and of this taxpayer to accept payment of time loans before maturity and to allow as a credit the unearned discount. In all other respects the books of the taxpayer were kept on the basis of cash receipts and disbursements.

On or about November 18, 1917, the Comptroller of the Currency sent to this taxpayer and to other national banks a communication requesting that in making a report of its condition to his office, a change be made in the method of reporting its interest and discount on time loans, so that there should be shown the approximate amount of interest earned upon loans but not yet collected. In conformity with this communication and commencing January 1, 1918, the taxpayer changed its method of accounting for discount on time loans by accruing discount only as it was earned so as to show at the end of the year the amount of discount earned but not collected, and in making its returns for income tax purposes it reported as income from discount for 1918 the amount collected and earned in that year on loans made during the year but not the amount earned in 1918 on loans made in 1917, which had been reported as income in its returns for 1917 under the method of accounting employed by it in that year. Neither was there reported as income for 1918 the amount of discount on loans made in 1918 which at the close of that year had not been earned.

It is conceded that the amount of discount earned in 1918 on bills discounted in 1917 and which was reported as income for 1917 is approximately $308,577.27, no part of which was returned as income for 1918; and that discount in the sum of $399,710.99 on bills discounted in 1918 but earned and collected in 1919 was not reported as a part of its 1918 income.

In the year 1919 the taxpayer reported as income from discounts all amounts collected and earned in that year on paper discounted in 1918 and 1919, but did not report as income the unearned and uncollected discount on bills discounted during the year. The unearned discount at December 31, 1919, on bills discounted during 1919 was the sum of $620,803.80.

The Commissioner refused to allow the taxpayer to change its method of accounting for discounts unless the taxpayer would amend its returns made prior to 1918. This the taxpayer declined to do and the Commissioner ruled that the discount should be reported and taxed on the basis of cash receipts and disbursements for the years here in question. In carrying out this ruling there was added to the income of the bank for the year 1918 the sum of $399,710.99, which represents discount on paper discounted in the year 1918 but neither earned nor collected in that year, and to the income as reported for 1919 the sum of $620,803.80, being discount on bills discounted in the year 1919 which was neither earned nor collected in that year.

#### DECISION.

The determination of the Commissioner is disapproved and the tax should be computed upon the basis set forth in the opinion. The amount of the deficiency will be settled by the Board on consent or on seven days' notice under Rule 50.

OPINION.

MARQUETTE: In income taxation there are two recognized methods of accounting employed to reflect income; one called the cash receipts and disbursement basis in which income is reported when either actually or constructively received, and the other known as the accrual basis, in which income is reported when due, in the sense of owing, although it may be payable in the future.

The taxpayer herein has always kept its books upon the basis of cash receipts and disbursements with the exception of discount on time loans. Prior to January 1, 1918, it was its practice with respect to such discount to credit the amount thereof directly to profit and loss at the time the paper was discounted as though the amount of discount had at that time been received, and it made its returns of income for taxation in the years preceding 1918 upon that basis. Commencing with the year 1918 a change was made in the method of accounting for discount by which the discount was taken into its income account only as it was earned; in other words, it adopted the accrual method of accounting for discount and in its income-tax returns for the year 1918 it reported as income derived from discount the amount collected and earned on paper discounted in that year, but not the amount earned in 1918 on paper discounted in 1917. In its return for 1919 there was reported as income from discount the amount collected and earned in that year on paper discounted in 1918 and 1919.

When the taxpayer changed its method of accounting to the accrual basis, it left out of income for 1918 the discount earned in that year on paper discounted in 1917, but which had been returned for taxation as income under the method of accounting employed in 1917. It is estimated that the amount of discount earned in 1918 on paper discounted in 1917 and returned as income in that year is the sum of $308,577.27. The amount of unearned discount at the end of the year 1918 was $399,710.99 which was earned and collected in 1919 and reported as income in that year. In 1919 the unearned discount at December 31st was $620,803.80 and was presumably reported as income for 1920.

The Commissioner refused to allow the change of accounting method unless the taxpayer would permit an adjustment of its returns in the years prior to 1918, to which it declined to accede. It was thereupon ruled by the Commissioner that the taxpayer must make its returns for the years 1918 and 1919 and pay the tax upon discount on the basis of cash receipts, and there was added to income the sum of $399,710.99 for the year 1918 and $620,803.80 for the year 1919, both sums representing discount unearned and uncollected in the respective years, and the tax was computed accordingly.

The testimony discloses that discount on time loans was never collected in advance of the payment of the paper and that it was the custom of banks in the taxpayer's district and of this taxpayer, and was a part of its contract, to accept payment in advance of the maturity of the paper and to allow as a credit to the borrower the amount of the unearned discount. A simple example will illustrate the method employed of accounting for discount under the two methods. A customer desires to borrow $1,000 for ninety days upon which the discount rate is 6 per cent. The taxpayer would discount a note

for $1,000 and the borrower would receive an immediate credit of $985; the difference of $15 was discount and under the method employed prior to 1918 was immediately taken into income account by a credit to profit and loss although not collected until maturity. Under the changed method the discount was taken into income only as the discount was earned. This change effected important results as to discount on paper the maturity or payment of which fell in the year succeeding that in which the paper was discounted. If the note in the above illustration was discounted on December 1st, the amount of discount earned at December 31st was $5. This amount would be taken into income for taxation and the balance of $10 accrued as it was earned in the succeeding year, if the note went to maturity. However, the borrower could anticipate the maturity date and the taxpayer was bound to accept payment at any time and to allow as a credit the amount of unearned discount. The amount of discount which it would earn was at all times contingent and dependent upon the will of the borrower.

The method of accounting employed prior to 1918 where the entire amount of discount was taken into income at the time of discount was not a cash-receipts basis for the reason that the taxpayer did not collect or receive discount in advance of maturity or payment of the paper, and discount on paper the maturity of which was anticipated or actually accrued in a year succeeding the year of discount was not cash either actually or constructively received within the year in which the paper was discounted, and hence not income in that year. Neither was the method employed the accrual method of accounting, the reason being that the amount of discount which it could demand or would receive was at all times contingent until the maturity of the paper, and at no time prior thereto did the taxpayer have a present right to the entire amount of discount which it could enforce if the maturity of the paper was anticipated. So much of the discount as was unearned within the year was, therefore, not a proper subject of accrual, and the manner of accounting for discount went beyond either the cash or accrual basis and included as income within the year, discount which was not income within the meaning of the law.

The regulation of the Treasury Department in force at this time relating to bank discount is contained in article 114 of Regulations 33 (Rev.), as follows:

ART. 114. Bank discounts. In cases wherein banks or other corporations loan money by discounting bills or notes, one of two methods shall be used in determining the amount of discount that is to be reported as income, namely, (1) if the bank or corporation makes a practice of crediting such discount directly to a "discount account" or to profit and loss, the total amount thus credited during the year shall be considered income and shall be so reported, regardless of the fact that a portion of this amount may represent discount paid in advance and not then earned; (2) if the bank or corporation follows the practice of crediting such discount to an "unearned discount account" and later, as the discount becomes earned, debits the unearned account and credits an "earned discount account" with the amount so earned, the total amount credited to the "earned discount account" during the year shall be considered income and shall be so returned. The corporation having income of this character should state in a memorandum attached to its return which of the two methods was used in determining the amount of discount returned as income.

The first method set forth apparently contemplates the cash-receipts basis and the second method the accrual basis for reporting

income from discount. If the first method is to be interpreted as requiring discount to be reported as income which was not actually or constructively received during the year, if the taxpayer in its method of accounting credited such discount to a discount account or to profit and loss, we are of opinion that the regulation is too broad and requires the reporting of something as income which was not income upon that basis. Nor do we think the method of bookkeeping employed in accounting for discount could make it income if it did not fall within the definition of income. The mere placing of amounts on the books and reporting them as income can not change the facts any more than the placing of losses on the books constitute them proper deductions if they are not such in fact. The facts must control, and bookkeeping entries are only evidence of the facts.

In *Douglas* v. *Edwards*, 298 Fed. 229, 234, the Circuit Court of Appeals of the Second Circuit had the following to say with respect to bookkeeping methods:

> There is no question of good faith in regard to these entries; but it is well at the outset to realize that, in this case, the rights of the parties can neither be established nor impaired by the bookkeeping methods employed, or by the names given to the various items. Whether something is capital or income, and to what year dividends should be allocated, depends partly upon the subject matter and partly upon the statute involved, when construed in the light of constitutional requirements.

See also *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179; *Appeal of Even Realty Co.*, 1 B. T. A., 355.

We think the above quotations are not only good law but good sense as well, and lead us to the conclusion that in the returns rendered prior to the year 1918 this taxpayer was reporting as income discount which was not income in the respective years within the meaning of the statute.

The much-quoted definition of income laid down by the Supreme Court in *Eisner* v. *Macomber*, 252 U. S. 189, 207, sustains this conclusion. In that case the court said:

> After examining dictionaries in common use (Bouv. L. D.; Standard Dict.; Webster's Internat. Dict.; Century Dict.), we find little to add to the succinct definition adopted in two cases arising under the Corporation Tax Act of 1909 (Stratton's Independence v. Howbert, 231 U. S. 399, 415, 34 Sup. Ct. 136, 140 (58 L. Ed. 285); Doyle v. Mitchell Bros. Co., 247 U. S. 179, 185, 38 Sup. Ct. 467, 469 (62 L. Ed. 1054)), "Income may be defined as the gain derived from capital, from labor, or from both combined," provided it be understood to include profit gained through a sale or conversion of capital assets, to which it was applied in the Doyle Case, 247 U. S. 183, 185, 38 Sup. Ct. 467, 469 (62 L. Ed. 1054).
>
> Brief as it is, it indicates the characteristic and distinguishing attribute of income essential for a correct solution of the present controversy. The Government, although basing its argument upon the definition as quoted, placed chief emphasis upon the word "gain," which was extended to include a variety of meanings; while the significance of the next three words was either overlooked or misconceived. "*Derived—from—capital*"; "the *gain—derived—from—capital*," etc. Here we have the essential matter: *not a gain accruing* to capital, not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value, *proceeding* from the property, *severed from* the capital, however invested or employed, and *coming in*, being "*derived*"—that is, *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit, and disposal—*that* is income derived from property. Nothing else answers the description.

The result is that in each of the years preceding the year 1918 there was reported as income subject to tax discount which was not income

in the particular year. The amount so reported and taxed in 1917 is computed as $308,577.27. This does not mean, however, that the taxpayer overstated its income in that amount for an adjustment of its returns in prior years might show either an over- or under-payment, depending upon whether the adjustment in prior years was greater or less than the excessive amount reported in 1917, but as to which we express no opinion. In any event we are satisfied that the taxpayer can not be compelled to report as income in its returns for the years subsequent to 1917 discount neither received nor accrued within the respective years.

This brings us to the year 1918, in which the taxpayer changed its method of accounting for discount to the accrual basis. As we have heretofore said, this change was not from a cash-receipts basis but from a basis which included as income discount neither collected nor accrued and which was not income within the meaning of the law. The evidence discloses that both parties have accepted the figure of $308,577.27, as representing the amount of discount unearned and uncollected at December 31, 1917, on paper discounted in that year, which had been reported by the taxpayer as income in its return for 1917 and the tax paid thereon. All of this amount was earned and presumably collected in the year 1918. At the close of the year 1918 there was unearned and uncollected as discount on paper discounted in that year $399,710.99, which, under the method of accounting employed was excluded from income of that year, as neither paid nor accrued. The Commissioner declined to allow the change of accounting method without an adjustment of the prior returns and held that as the taxpayer kept its books on the cash-receipts basis, the discount should be reported for taxation on that basis. This ruling was carried out by reversing the accruals, which, if the account had been upon a cash basis, would have accomplished the result sought to be obtained by the ruling; but as we have endeavored to show, the account was not upon a cash basis and the effect of the procedure adopted was to place the taxpayer upon the exact basis with respect to its discount account as in the years prior to 1918, and to include in its returns for 1918 and 1919 discount neither received nor accrued within those years and which we have held did not constitute income. The refusal to allow the change to an accrual method for discount is based upon sections 212 (*b*) and 213 (*a*) of the Revenue Act of 1918 and article 23 of regulations 45, as amended by T. D. 2873. The sections of the 1918 act are as follows:

SEC. 212 (*b*). The net income shall be computed upon the basis of the tax-payer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 200, or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

SEC. 213 (*a*). * * * The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (*b*) of section 212, any such amounts are to be properly accounted for as of a different period.

T. D. 2873 provides for changes in accounting methods and the manner in which they shall be accomplished, and sets forth the following with respect to bank discount:

Bank discounts. Banks which in the past have treated discount as income before it was actually earned, and during the taxable year 1918 have placed the discount account upon an accrual basis, will be required to submit the information called for in paragraph 2 above and submit an amended return for the taxable year 1917, and will be permitted to submit (or the Commissioner may require) amended returns for all prior years during which the taxpayer was subject to tax. Additional taxes for prior years found to be due upon such reexamination will be paid upon the basis of the amended returns in the ordinary way. Where it appears that prior taxes have been paid in excess of the amount properly due, such excess will, to the extent possible, be credited against future income and profits taxes under the provisions of section 252 of the Revenue Act of 1918.

The statute contemplates an accounting method which will correctly reflect income, and we do not doubt the reasonableness of the above regulation when the change is from a method of accounting which reflects income to another approved method, and the Commissioner may be justified in refusing to permit a change without adjustment of prior returns. Here we have a change from a method of accounting which includes items not properly income and we do not think a change to a method which will clearly reflect income can be prevented, and the taxpayer compelled to report amounts not properly taxable as income. Whenever the bar of the statute of limitations does not prevent such action, the prior returns should be adjusted so as to show the correct income. The statute appears to have barred any adjustments herein in prior returns, but the situation is a practical one and we think the taxpayer must be permitted to place its books upon a basis which clearly reflects its income. It has adopted the accrual method for this purpose and we believe that method will accomplish the desired result when properly applied. In fact, the Commissioner recognizes by his regulations cited herein that accrual method of accounting for discount will correctly reflect income from that source.

The taxpayer, however, in adopting the accrual method for reporting discount has failed to include as income for 1918 the amount of $308,577.27 earned in 1918 on discounts made in 1917. Its contention, of course, is that having paid income tax upon this amount it can not now be compelled to again include this amount in income for another year and pay the tax thereon. As we have endeavored to show, this amount was not income within the year 1917, and the fact that a tax was paid thereon for that year will not excuse it from paying the tax in the year in which it is properly to be accounted for as income. The Commissioner has excluded this item and included the sum of $399,710.99, being discount uncollected and unearned on paper discounted in 1918. We believe these items should be reversed and that the sum of $308,577.27 should be included and that $399,710.99 should be excluded from gross income in computing net income subject to tax in the year 1918.

In view of what we have said, the year 1919 presents no difficulties. The taxpayer included in its returns for that year $399,710.99, being discount earned and collected in 1919 on paper discounted in 1918, and excluded the sum of $620,803.80, being discount uncollected and unearned at the close of 1919. The Commissioner has excluded the

$399,710.99 and has included the $620,803.80. These items should likewise be reversed in computing net income and the amounts as reported by the taxpayer should be permitted to stand.

The deficiency in tax for 1918 and 1919 should be computed upon the basis set forth herein and upon the admission of taxpayer as to taxes due for the year 1919.