Clarence L. Bibb v. Commissioner.
Bibb v. Commissioner
Docket No. 2117-63.
United States Tax Court
T.C. Memo 1965-296; 1965 Tax Ct. Memo LEXIS 35; 24 T.C.M. (CCH) 1640; T.C.M. (RIA) 65296; November 8, 1965
*35 Held, that withdrawals of funds by petitioner from a closely held corporation of which he was a stockholder constituted dividends rather than loans. William H. File, P. O. Drawer L, Beckley, W. Va., for the petitioner. Rodney G. Haworth, for the respondent. ATKINS
Memorandum Opinion ATKINS, Judge: The respondent determined deficiencies in income tax for the taxable years 1959, 1960, and 1961 in the respective amounts of $4,647.17, $2,019.48, and $2,980.47. The issue presented is whether the withdrawal of funds by the petitioner during the years in issue from the Beckley Hardware and Supply Company (hereinafter referred to as the company) constituted loans to him, or distributions to him taxable as dividends under the provisions of section 316 [1] of the Internal Revenue Code *36 of 1954. All of the facts have been stipulated and are incorporated herein by this reference. The petitioner is an individual residing in Beckley, West Virginia. The petitioner's Federal income tax returns for the taxable years 1959, 1960, and 1961 were filed with the district director of internal revenue, Parkersburg, West Virginia. Therein he reported gross income of $10,805, $9,150, and $9,133.33, respectively, which included in each instance $9,000 as salary from the company. During the taxable years involved the petitioner and his brothers and sisters directly or indirectly owned all of the outstanding capital stock of the company. The amount owned by each is not shown. During those years the petitioner was secretary-treasurer of the company and, in such capacity, was authorized to sign company checks. Petitioner's brother, E. E. Bibb, Sr., was president and general manager of the company. For several years *37 the petitioner withdrew funds from the company which were charged to various accounts on the company's books. At the end of each of the years 1958 to 1961 the cumulative amounts of such withdrawals were as follows: Dec. 31, 1958
Dec. 31, 1959
Dec. 31, 1960
Dec. 31, 1961
Open Account General Ledger
$35,406.15
$42,955.70
$46,631.49
$ 76,155.89
Note Account General Ledger
23,701.38
23,701.38
23,701.38
23,701.38
Accounts Receivable General Ledger
7,419.81
7,918.15
8,695.35
8,695.35
Items in Cash Drawer
4,390.00
12,890.00
17,449.25
Total
$70,917.34
$87,465.23
$96,477.47
$108,552.62
Increase in withdrawals per year
$16,547.89
$ 9,012.24
$ 12,075.15
The book value of the petitioner's stock in the company on December 31, 1958, was $67,594.35. The funds withdrawn by the petitioner from the company were used by him for personal expenses. The petitioner made no payment of any kind to the company to reduce the balance in the accounts itemized above, except that a dividend of $1,615 was credited thereto in 1959. There were no dividends formally paid by the company in 1958, 1960, or 1961, even though sufficient earned surplus existed. *38 The company's lowest earned surplus balance during the periods material to this proceeding was a balance of $237,493.49 on December 31, 1961. The petitioner's withdrawals from the company were made with the knowledge and consent of most of the stockholders and officers of the company. Pursuant to an agreement reached between the petitioner and the company, the petitioner on August 1, 1963, executed an instrument whereby he assigned to the company all the company stock which he then owned in his own name (10 shares) and his equitable interest in and to all stock of the company to which he was then or might become entitled (it was recited therein that he had an equitable interest in 151 1/2 shares of such stock which were to be held in trust until 1967). In the instrument it was recited that the transfers were made to secure repayment to the company of the sum of $112,378.67 which he owed the company at December 31, 1962, as a result of unsecured loans theretofore obtained by him from the company, and also to secure any additional amounts which he might thereafter withdraw from the company. On February 10, 1965, the petitioner executed an assignment form by which he transferred to *39 the company an insurance policy on his life in the face amount of $10,000 and all sums then or thereafter due under the policy "as collateral security for a loan" of $118,835.24. On the same date, by a similar form, the petitioner also transferred to the company his interest in another insurance policy on his life (in the face amount of $2,500). Such latter assignment was subordinate to an assignment previously made to the life insurance company to secure a loan which petitioner had obtained from the insurance company, on which loan approximately $1,367.50 was due. The respondent issued the notices of deficiency for the years in question on February 27, 1963. In determining the deficiencies for the taxable years 1959, 1960, and 1961 the respondent determined that the net amount withdrawn from the company by the petitioner in 1959, namely, $16,547.89, and the amounts withdrawn in 1960 and 1961 in the respective amounts of $9,012.24 and $12,075.15, constituted distributions taxable as dividends under the provisions of section 316 of the Internal Revenue Code of 1954. Whether a stockholder's withdrawals of amounts from a closely held corporation constitute loans *40 or distributions is a question of fact to be decided upon all the evidence and depends upon the intent existing at the time the withdrawals are made. Clark v. Commissioner, (C.A. 9) 266 F. 2d 698, affirming on this issue a Memorandum Opinion of this Court; William C. Baird, 25 T.C. 387; and Carl L. White, 17 T.C. 1562. The amounts withdrawn by the petitioner were carried on the books of the company as amounts due and owing from the petitioner to the company. However, it is well established that bookkeeping entries, although evidentiary of the facts which they purport to record, are not conclusive. Doyle v. Mitchell Bros. Co., 247 U.S. 179; Helvering v. Midland Mutual Life Ins. Co., 300 U.S. 216; Richardson et al. v. Commissioner, (C.A. 4) 264 F. 2d 400; Commissioner v. North Jersey Title Ins. Co., (C.A. 3) 79 F. 2d 492; Elie D. Goodstein, 30 T.C. 1178, affd. (C.A. 1) 267 F. 2d 127; Bennett E. Meyers, 21 T.C. 331; William C. Baird, supraBen R. Meyer, 45 B.T.A. 228; and Chatham & Phenix Nat'l Bank, 1 B.T.A. 460. *41 The respondent's determination that the withdrawals constituted distributions taxable as dividends is presumed to be correct and the burden of proof rests upon the petitioner to show error in such determination. Welch v. Helvering, 290 U.S. 111. No testimony was presented as to the intention of the parties with respect to repayment of the withdrawals. It seems apparent that no notes were given for the particular amounts withdrawn in the years in question, since the notes receivable account throughout such years remained constant. There is no evidence of any agreement as to a maturity date for repayment of the amounts in question or as to the payment of any interest thereon. Furthermore, as will be noted, the petitioner's debit balance in the account increased from $70,917.34 at the end of 1958 to $108,552.62 at the end of 1961 (and to $118,835.24 in early 1965) and no repayments were made by the petitioner, with the exception of the crediting of a formal dividend in 1959 in the amount of $1,615. The corporation, in the years in question, declared no formal dividends, with the exception of the formal dividend in 1959, of which the petitioner's share was $1,615, despite *42 the fact that it had earned surplus in excess of $237,000. Nor is there any evidence to show that it had in the past declared formal dividends. Upon this record we must conclude that petitioner has failed to meet his burden of proving error in the respondent's determination that the amounts withdrawn constituted distributions taxable as dividends. [2] Indeed, we think the record as a whole sustains the conclusion, and we find as a fact, that the withdrawals in question constituted distributions taxable as dividends. We have taken into consideration the fact that the petitioner transferred to the company all his stock interest in the company and certain life insurance policies, stating that they were transferred as security or collateral for repayment of amounts withdrawn. However, these assignments occurred subsequent to the mailing of the notices of deficiency herein and indeed after the petition was filed in the instant case (the petition was filed on May 24, 1963), and we do not consider such assignments as sufficient to establish that the intention of the parties, at the time the withdrawals were made, was that such withdrawals should constitute loans. See Atlanta Biltmore Hotel Corp. v. Commissioner, (C.A. 5) 349 F. 2d 677, *43 affirming a Memorandum Opinion of this Court; and William C. Baird, supra.
The respondent's determination is approved. Decision will be entered for the respondent. Footnotes
1. Section 316(a) provides in part as follows: For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders - (1) out of its earnings and profits accumulated after February 28, 1913 * * *.↩
2. We are not advised as to whether the other stockholders withdrew amounts from the company. However, the fact that a distribution may not be proportionate among all stockholders or that some stockholders do not participate, is not determinative of whether a withdrawal constitutes a dividend. Ruphane B. Iverson, 29 B.T.A. 863; Paramount-Richards Theatres, Inc. v. Commissioner, (C.A. 5) 153 F. 2d 602; Louis Greenspon, 23 T.C. 138, affd. on this issue (C.A. 8) 229 F. 2d 947; and C. W. Murchison, 32 B.T.A. 32↩.