## CHRISTOPHER v. BURNET.

### No. 5234.

Court of Appeals of District of Columbia.

Argued Nov. 6, 1931.

Decided Dec. 14, 1931.

See, also, 60 App. D. C. 368, 55 F.(2d) 530.

Geo. E. H. Goodner, of Washington, D. C., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch, John G. Remey, E. Riley Campbell, Sewall Key, and C. M. Charest, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a final decision of the Board of Tax Appeals. 13 B. T. A. 729.

The material facts are as follows: Appellant, L. J. Christopher, entered the wholesale and retail ice cream, candy, and confectionery business in 1887 in Los Angeles, Cal., with a capital of approximately $50,-000. The business was successful. Prior to 1914 appellant had acquired real estate and built thereon an extensive plant, and in that year he organized the L. J. Christopher Company of California, under the laws of that state, with a capital stock of $400,300. To that company he transferred all the assets of the business, including the good will, in consideration of all its capital stock, except a few qualifying shares. Appellant was at all times president of the California company and owner of all its stock, except the qualifying shares and certain small blocks of stock held by employees, which were taken over by appellant prior to the sale hereinafter referred to.

From the date of its incorporation down to and including the year 1924, the California company made no formal declaration of dividends, but during that period appellant from time to time withdrew from the earnings of the California company money and other personalty. These amounts were charged against him on the books of the California company.

In February, 1921, the L. J. Christopher Company of Delaware, was organized under the laws of Delaware, and thereupon acquired all the personal property of the California company. The consideration paid by the Delaware company to the California company under the bill of sale was $125,000 cash and 1,250 shares of its 7 per cent. preferred stock of the par value of $100 each. Appellant was president of both corporations. The cash was paid through a check of the Delaware company, payable to the California company. This check was indorsed by the California company to appellant, who deposited it in the bank in his personal account. During 1921, the Dela-

ware company retired $25,000 par value of its preferred stock for the sum of $25,000. The check representing this payment was payable to and received by the California company, and by it indorsed to appellant, who deposited it in the bank to his personal account.

Prior to the sale to the Delaware company, the California company had placed orders for goods at a sale price of $12,093.46, and had paid this sum to the sellers. The goods were received subsequent to the sale and turned over to the Delaware company, who thereupon paid to the California company the cost of the goods. The California company did not dissolve after the sale of part of its assets to the Delaware company, and is now in existence, holding and controlling its remaining assets.

The Commissioner of Internal Revenue held that the amounts received by appellant in 1921 (aggregating $158,528.14) were dividends and taxable as such. The board affirmed this finding.

Under section 201 (a) of the Revenue Act of 1921 (chapter 136, 42 Stat. 227, 228), the term *dividend* "means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913. * * *" The board has found that appellant dominated and controlled these corporations and that, although his salary was $1,000 per month, he withdrew no part of it, but did withdraw money whenever it suited him to do so; that the California company from the date of its organization to and including the year 1921 (a period of 7 years) made no formal declaration of a single dividend. During all that time appellant was the owner of practically all the capital stock of the California company. It was a one-man concern.

It is settled law that no formal dividend declaration is necessary where substantially all the stock is owned by a single individual. Atherton v. Beaman (C. C. A.) 264 F. 878; Chattanooga Sav. Bank v. Brewer (C. C. A.) 17 F.(2d) 79, certiorari denied 274 U. S. 751, 47 S. Ct. 764, 71 L. Ed. 1332.

In the case last cited, two stockholders, owning all the capital stock, withdrew funds from the business without corporate action or authority, charging the withdrawals to themselves on the books of the corporation. It was held that such withdrawals constituted taxable dividends and not loans, as contended by the taxpayer. In the present case, appellant executed no notes or evidences of indebtedness; paid no interest and none was charged against him; and we agree with the board that "since there is no evidence in the record which indicates that L. J. Christopher intended to repay these withdrawals, the mere entries made on the books of charges against him can not convert into an asset what was in fact a distribution."

Appellant suggests that the distribution was not a dividend because the evidence fails to show that the holders of the qualifying shares participated therein. Assuming that the beneficial interest of the qualifying shares was not in appellant, the owners of such shares are not complaining; nor could they, having acquiesced in his management and control of the corporation for years. Ratcliff v. Clendenin (C. C. A.) 232 F. 61; Allen v. Wilson (C. C.) 28 F. 677. See also Hadley v. Commissioner of Internal Revenue, 59 App. D. C. 139, 36 F.(2d) 543. Certainly appellant is not in a position to complain.

It is contended that the board erred in finding that the item of $12,093.46 was a dividend. On this point, the board said: "The petitioner further faintly contends that he should not be charged with the item of $12,093.46. The burden rests upon petitioner to overcome the findings of respondent (commissioner) on this point. Although he testified at the hearing, he gave no testimony with respect to this item. * * *" On this state of the record, the presumption in favor of the correctness of the conclusions below has not been overcome.

It further is contended that the board erred in holding that appellant received a taxable dividend in the amount stated from the California company, "when under the provisions of section 201(f) of the Revenue Act of 1921 no such amount was available to said company for the payment of dividends." Appellant argues that, since he received the bulk of his withdrawals within the first sixty days of 1921, he cannot, in view of section 201(f) of the 1921 act (42 Stat. 229), be charged with dividends in excess of the amount of the undistributed earnings of the corporation as of January 1, 1921. Such a construction of section 201(f) brings that section into conflict with section 201(b), 42 Stat. 228.

Section 201(b) reads: "For the purposes of this Act *every* distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to

the extent of such earnings or profits accumulated since February 28, 1913. * * * " (Italics ours.)

It has been held that this section means that so long as a corporation has on hand earnings or profits accumulated since February 28, 1913, and available for distribution, every distribution made to stockholders is made from the most recently accumulated earnings or profits, and, in effect, the statute creates a presumption that the distributions were so made. McCaughn v. McCahan (C. C. A.) 39 F.(2d) 3; Leland v. Commissioner of Internal Revenue (C. C. A.) 50 F.(2d) 523.

Section 201(f) provides that "any distribution made during the first sixty days of any taxable year shall be deemed to have been made from earnings or profits accumulated during preceding taxable years. * * * This subdivision shall not be in effect after December 31, 1921."

This subdivision first found its way into the taxing acts as section 201(e) of the Revenue Act of 1918 (Act of February 24, 1919, c. 18, 40 Stat. 1057, 1060), and was reenacted as section 201(f) in the 1921 act. Just why it was enacted does not appear. It is, however, obvious that the apparent conflict between this subdivision and subdivision (b) of section 201 required elucidation by the administrative officers.

Regulations 45, art. 1542, under the 1918 act, was promulgated, in which section 201 was interpreted as follows: *"Presumption as to source of distribution.* In the case of a corporation other than a personal service corporation any distribution to stockholders is deemed to have been made so far as possible * * * (c) if during the first sixty days of a taxable year, from earnings or profits accumulated during preceding taxable years; and (d), if during the remainder of a taxable year after the first sixty days, from earnings or profits accumulated during the taxable year up to the date of distribution. The presumption contained in clauses (c) and (d) affects the determination of invested capital for the purpose of the war profits and excess profits tax, but has no effect upon the rates at which dividends paid in 1918 and subsequent years are taxed. * * * "

Regulations 62, art. 1542(b), under the 1921 act, was promulgated, in which section 201(f) was interpreted as follows: " * * * The presumptions contained in this paragraph affect the determination of invested capital for the purpose of the excess profits tax, and are not in effect after December 31, 1921."

As thus interpreted, section 201(b) and section 201(f) of the 1921 act do not conflict, for section 201(f) has no effect upon the rates at which dividends paid in 1921 are taxed in the hands of the distributee. Administrative regulations contemporaneously construing a statute and made for its enforcement, and which are not unreasonable or inconsistent with the statute, "will not be overruled, except for weighty reasons." Fawcus Machine Co. v. United States, 282 U. S. 375, 51 S. Ct. 144, 145, 75 L. Ed. 397. The interpretation placed upon the statute by the administrative officers was not, in our view, either unreasonable or in conflict with the provisions of the statute. A similar section in the 1918 act was (under regulations 45) held to affect the determination of invested capital for the purpose of the excess profits tax. The 1921 act (section 301) repealed the excess profits tax as to income received after the calendar year 1921, and it is significant that the same act provided that section 201(f) (which the administrative officers had again held to affect only the determination of invested capital for the purpose of the excess profits tax) should likewise not be in effect after the calender year 1921, to wit, December 31, 1921.

Finally, it is contended that the only issue raised in the pleadings was whether or not the distribution made by the California company was a liquidating dividend, and that therefore the board was without jurisdiction to determine that it was in fact an ordinary dividend. The record does not sustain this contention of appellant. Moreover, all the facts were before the board, and it found therefrom, as it was authorized to do, the correct amount of the deficiency. Hughes v. Commissioner (C. C. A.) 38 F. (2d) 755; Seufert Bros. Co. v. Lucas (C. C. A.) 44 F.(2d) 528; Hurwitz v. Commissioner (C. C. A.) 45 F.(2d) 780. See, also, Lewis-Hall Iron Works v. Blair, 57 App. D. C. 364, 23 F.(2d) 972.

The decision is affirmed.

Affirmed.