## PARAMOUNT–RICHARDS THEATRES, Inc., et al., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11315.

Circuit Court of Appeals, Fifth Circuit.

Feb. 15, 1946.

Gibbons Burke, of New Orleans, La., for petitioners.

Harry Baum and A. F. Prescott, Sp. Assts. to Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Bernard D. Daniels, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

The appeals here are from decisions of the Tax Court denying certain tax deductions claimed by Paramount-Richards Theatres, Inc., Ernest V. Richards, Jr., and his wife, Loretta McKenna Richards, for the years 1938 and 1939. Richards and his wife reported their income on the community property basis.

The important facts are these: In November 1934, Paramount Publix Corporation, a Delaware corporation, was involved in a reorganization proceeding under 77B

of the Bankruptcy Act, 11 U.S.C.A. § 207, in the Southern District of New York. At the same time, two Louisiana corporations, Saenger Theatres, Inc. and Saenger Realty Corporation, Inc., were in process of reorganization. As part of the plan, the trustees of Paramount-Publix Corporation acquired all the capital stock of the reorganized Saenger Theatres, Inc. (called Reorganized Saenger).

In order to secure more capital, the trustees of Paramount-Publix Corporation (whose rights are now held by Paramount Pictures, Inc.) entered into an agreement with Ernest V. Richards, which, among other things, provided that a Delaware Holding Company was to be formed to take over the capital stock the trustees held in Reorganized Saenger. The trustees were to receive in return all of the capital stock of the Holding Company (later called Paramount-Richards, Inc.). The Holding Company's capital stock was to consist of two classes, designated A and B. They were to sell to Richards all the Class A stock for $25,000 in cash. Richards was to be named general manager and president of the Holding Company, Reorganized Saenger and Reorganized Saenger Realty, at a salary for himself and one assistant of $600 per week for a period of five years.

Elaborate provisions were made whereby the trustees might reacquire the stock sold to Richards, or Richards might acquire the stock retained by the trustees within and after the five year period.

The controversy stems from articles 8 and 9(a) of the agreement:

Article 8 provided that the parties should cause the Holding Company to take out, pay for and carry on Richards' life, if procurable at standard rates for the age attained by him, a policy or policies of term or straight life insurance, in a total amount of $250,000, for a period of five years following the date of consummation of the plan of reorganization, payable upon Richards' death to his estate or to such beneficiary as he might name. If both term and straight life insurance should be procurable, the trustees were to determine which type should be taken out. The article also provided that the parties should cause the Holding Company to take out, pay for and carry a policy of disability insurance, if procurable at standard rates for the age attained by Richards, providing for the payment to him of $250,000, in event of his becoming permanently and totally disabled within the five year period. Any dividends payable on the life or the disability insurance were to be payable to the Holding Company. If after the procurement of the aforesaid life or disability insurance Richards, during the five year period, should cease to be president or general manager of the Holding Company or of Reorganized Saenger, the parties were not thereafter to be obligated to cause the Holding Company to continue to pay the premiums on the life or disability insurance, but were obligated to cause the Holding Company to permit Richards to continue payment of the premiums on such insurance for the benefit of himself or his estate or of such beneficiary as he might name. Such permission was to be conditioned upon Richards' payment to the Holding Company of such part of any premiums theretofore paid by it as were applicable to the period following the date on which he ceased to be president or general manager of the Holding Company or Reorganized Saenger. It was further provided that if Richards should become disabled within the five year period in such manner as to entitle the trustees to exercise a certain option provided for in the next article, and they should exercise such option, and the trustees so desired, the parties were to cause the Holding Company to continue to pay the premiums on the life insurance and to change the beneficiary of such insurance to itself. If the Holding Company should continue to pay the premiums under these circumstances, and Richards should die within the five year period, the Holding Company was to pay to the trustees from the proceeds of such life insurance the amount of $125,000, plus the amount of any premiums upon such life insurance after the date on which Richards became disabled, and pay the balance of such proceeds to Richards' estate or to such persons as he might name.

Article 9(a) provided in event of Richards' death prior to the expiration of the five year period, the trustees might purchase his Class A stock in the Holding Company for $25,000, plus a sum equivalent to 50 per cent of the undistributed consolidated net earnings of the Holding Company and its subsidiaries from the beginning of the five year period to the date of his death. If the life insurance referred to in Article 8 had not been procured prior to Richards' death, there was to be added to the price payable by the trustees the sum of $125,000.

Pursuant to the agreement, Richards, in July 1935, was issued and received, at standard rates, seven ordinary life insurance policies in the total amount of $250,000. In all the policies as originally drawn, Mrs. Richards was named as sole beneficiary and Richards retained the right to change the beneficiary as he desired.

On February 18, 1941, he designated as beneficiaries certain parties to whom he had previously transferred the beneficial interest in 750 shares of Class A stock. These beneficiaries, in the event of Richards' death, were to share equally in one-fourth of the net amount of the policies, and Mrs. Richards was named as beneficiary of the remaining three-fourths.

The issues presented on these consolidated appeals are interrelated: First. Did taxpayer corporation's payments of insurance premiums represent dividend distribution under Section 115 of the Revenue Act of 1938 and the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 115, or was it deductible business expenses under Section 23(a), 26 U.S.C.A. Int.Rev.Code, § 23(a)? Second. Was taxpayer Richards taxable on the portion of the premium payments allocable to his stock interest in taxpayer corporation?

The Tax Court determined that both Paramount Pictures, Inc., and Richards benefited from the agreement:

"If, during the five-year period, Richards had died before the $250,000 of insurance had been procured on his life, and Paramount Pictures, Inc. had exercised its option to purchase his Class A stock, the amount to be paid for the stock was to be $250,000 more than if the insurance had been obtained. From this, it appears that it was expected that both Richards and Paramount Pictures, Inc. would be benefited, and equally so, by reason of the insurance. Since Richards and Paramount Pictures Inc. were equal owners of the stock of Paramount-Richards Theatres, Inc., and they caused it to pay the premiums on the insurance from which they expected to be benefited equally, we think the amounts of the insurance premiums represented distributions made to them, in equal amounts, by their corporation, and are taxable to them as dividends. Since Richards was the beneficial owner of only three-fourths of the one-fourth of the stock of which he was the record owner, only three eighths of the premiums paid each year constituted income to him."

We agree with the Tax Court. The Holding Company was merely a conduit through which the parties accomplished the adjustment of the price to be paid for the stock in the event the option was exercised. Permitting the light to shine through, we have an agreement by two stockholders who owned the legal title to all the stock in a corporation providing for a policy of life insurance on one of the stockholders, the proceeds of which are to be used to adjust the purchase price of stock between the parties in the event certain options to purchase are exercised. The stockholders thus appropriated corporate funds to their joint benefit by the premium payments. These payments fall far short of the ordinary and necessary expenses of a corporation engaged in the motion picture theatre business. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607; McDonald v. Commissioner, 323 U.S. 57, 65 S.Ct. 96, 155 A. L.R. 119; Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505.

Corporate earnings may constitute a dividend notwithstanding that the formalities of a dividend declaration are not observed; that the distribution is not recorded on the corporate books as such; that it is not in proportion to stockholdings, or even that some of the stockholders do not participate in its benefits. Nothing in the statute or decisions warrants the view that a dividend distribution loses its character as such and becomes a deductible business expense merely because stockholders do not benefit equally from the distribution. Regensburg v. Commissioner, 2 Cir., 144 F.2d 41; Chattanooga Savings Bank v. Brewer, 6 Cir., 17 F.2d 79; Christopher v. Burnet, 60 App.D.C. 365, 55 F.2d 527; Hadley v. Commissioner, 59 App.D.C. 139, 36 F.2d 543; Phelps v. Commissioner, 7 Cir., 54 F.2d 289.

We are of opinion that the premium payments represented dividend distribution, not corporate business expenses, and that the insurance purchased with these premiums was to inure to the benefit of both stockholders.

We find no reversible error in the decisions of the Tax Court, and they are affirmed.