WILLIAM C. BAIRD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HAROLD J. BAIRD AND LOUISE R. BAIRD, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 48075, 48076. Filed December 5, 1955.

*James W. Allen, C. P. A.,* for the petitioners.
*J. Elton Mitchiner, Esq.,* for the respondent.

388

392

## OPINION.

FISHER, *Judge:* The principal issue presented for decision is whether the withdrawals by petitioners William C. Baird and Harold J. Baird from their family-owned corporation, of which they were officers and stockholders in the years prior to 1951, constituted a disguised distribution of dividends taxable to them as income for the years involved herein, as determined by respondent, or were bona fide loans, as contended by petitioners.

We are of the opinion, upon consideration of the entire record, that the withdrawals in question by the Baird brothers, respectively, in excess of salary credits were distributions out of earnings and profits of the corporation made to them as shareholders within the meaning of section 115 (a) of the Internal Revenue Code of 1939, and that such distributions were dividends rather than loans.

The primary issue is one of fact to be determined upon consideration of the particular circumstances in each case. It is necessary, therefore, to examine all of the attendant facts to discern the true nature of the transactions involved between the withdrawers and Baird & Company. Since the corporation was wholly owned by petitioners and their respective wives, the family control invites careful scrutiny. *Ben R. Meyer,* 45 B. T. A. 228 (1941).

It is contended that since each of the Baird brothers owned only 1 share of stock in Baird & Company, they were not in a position to control the corporation's affairs or distribute its earnings. The record is clear, however, that the brothers, although minority stockholders, were in fact in control of the corporation, and that such control was

not in any way affected for practical purposes by the fact that each of their wives was a director and owned 99 shares of the stock of the corporation. As a result of the family relationship, petitioner husbands, throughout the corporate existence, have dealt with corporate affairs with a free hand, and have withdrawn the company's earnings and profits at their own discretion, for their own personal use, without objection or restraint by the majority stockholders, who received no part of the withdrawals.

The intention of the parties in interest is controlling. *Carl L. White*, 17 T. C. 1563, 1568 (1952). The complete dominion of the corporation's affairs by the Baird brothers is a factor reflecting upon that intent. It is our view that the conduct of the parties clearly supports the inference that the Baird brothers intended to siphon off corporate earnings for their own personal use without any plan of reimbursement. Prior to as well as during each of the taxable years 1947 to 1951, petitioners made substantial withdrawals in excess of the credits to their individual accounts so that the total net debit balances of each has steadily increased from year to year. The fact that the individual debit balances were allowed to mount steadily each year without any substantial repayment thereon for more than 20 years until they reached a total net withdrawal balance of approximately $98,000 is inconsistent with an intent to borrow and repay. *C. W. Murchison*, 32 B. T. A. 32, 35 (1935). The tax saving which would result, if petitioners' techniques were approved, is obvious, and the motive is by the same token apparent. See *Ben R. Meyer, supra.*

We think it is clear that the unpaid joint withdrawals in the taxable year 1949 in the amount of $17,540 shown in the corporate books as an account labeled "Notes Receivable" (the sum of $8,770 debited to each petitioner in the taxable year 1949), occupy the same position and character as the individual open accounts, and are, therefore, also distributions of earnings. Separate treatment of the joint accounts on the books is not sufficient to support a contrary view in the light of all of the surrounding circumstances, and the $17,540 debit from the cash journal to "Notes Receivable" account was simply a shift from one account to another. There is nothing here to indicate a plan or intention to repay, and the conduct of the parties over a period of years supports a contrary view.

Nor do we regard the giving of demand notes dated February 2, 1953, to Baird & Company (in face amounts equal to the individual balances in their account as of December 31, 1951, and the debit balance in their joint account as of April 16, 1949) of any significance as indicating that petitioners' withdrawals constituted debts, since this was done only after the revenue agent took the position that the "loans" were in fact disguised dividends. To us, it is incredible that

the Baird brothers would have waited more than 6 years to execute a note for the $17,540 if they had intended to do so in the first place. It seems obvious that the execution of the notes was a mere afterthought directed to an effort to give the withdrawals a character which they did not have during the years when they were made. While it is true that the absence of the notes and the failure to charge or pay interest are not alone conclusive on the basic issue, it is equally true that the treatment of petitioners' withdrawals on the corporate books as "Notes Receivable" is not controlling, since it is well settled that book entries may not be used to conceal realities as a means of relieving the taxpayer from liability for income taxes. *Ben R. Meyer, supra,* and cases cited therein. We are aware of the fact that petitioners made withdrawals on two different occasions in 1949 and repaid the corporation within a month. We do not think, however, that these two payments are sufficient to counterbalance the other strong indicia of an intentional distribution of earnings with respect to the withdrawals in dispute.

As further indication that the withdrawals were intended to be permanent in character is the withdrawal by the brothers of corporate funds in 1948 and 1949 to finance their entire joint purchase of a parcel of real estate. Although they sold the property in 1951, for a net profit of $5,785.08 each, at no time have they applied any part of the proceeds derived therefrom to the payment of their withdrawals.

Our view is not altered by the insurance policy in the lesser sum of $20,000 which the brothers took out in favor of Baird & Company. There is no evidence that the policy was intended as security for the repayment of the withdrawals. By contrast, in *Al Goodman, Inc.,* 23 T. C. 288, 301 (1954), cited by petitioners, the withdrawal which we there characterized as a loan, was secured by collateral worth more than twice the amount of the withdrawal, and at all times the taxpayer had personal assets of considerable value in addition to the collateral which could have been resorted to in order to repay the loan. See *M. Jackson Crispin,* 32 B. T. A. 151, 155 (1935).

Petitioners argue that the withdrawals did not constitute a dividend distribution since they received the entire amount in controversy for their own personal use, whereas they each owned only 1 share out of the total 200 shares issued by Baird & Company, and no distribution was made to the other shareholders. The law is well settled that the disbursement of corporate earnings serving the ends of some shareholders may constitute a dividend to such stockholders notwithstanding that the formalities of a dividend declaration are not observed; that it is not in proportion to stockholdings; or that some of the stockholders do not participate in its benefits; *E. T. Schuler,* 29 B. T. A. 415 (1933); *Paramount-Richards Theatre* v. *Commissioner,* 153 F.

2d 602, 604 (C. A. 5, 1946). See also 1 Mertens, Law of Federal Income Taxation sec. 9.11 (1942), p. 440, and 1954 Cumulative Pocket Supplement sec. 9.11 and 9.12. This principle is especially applicable where, as here, the record does not disclose that the wives, who were the nonparticipating stockholders, complained of this inequality, and must, under the circumstances, be deemed to have ratified the distribution. *Lincoln National Bank* v. *Burnet*, 63 F. 2d 131 (C. A., D. C., 1933), affirming *Lincoln National Bank, Executor*, 23 B. T. A. 1304 (1931). It is significant, also, that as of December 31, 1951, the debit balances on the corporate books in the petitioners' individual accounts were $49,322.93 to William C. Baird and $48,768.95 to Harold J. Baird, a difference of $553.98 over a period of more than 20 years of withdrawals. Moreover, the joint account debit balance as of the same date in an account labeled "Notes Receivable" was equal.

It is also significant that there was no apparent ceiling for such withdrawals, nor did the brothers have ready resources available with which to reimburse the company. Moreover, there was no arrangement to repay the ever-increasing balances on call or at a definite time in the future. While of lesser importance, we think it appropriate to refer to the testimony of petitioner Louise R. Baird, a corporate director, to the effect that she would not have required the corporation to sue her husband if he failed to pay the "loans," thus lending further corroboration to our finding that petitioners' wives did not contemplate acting independently or contrary to the wishes of their husbands by enforcement of the company's rights as a bona fide creditor.

Since the year 1931 the surplus account in the corporate books has never reflected a dividend payment. Other than current Federal taxes, the corporate statements reveal no liabilities for the taxable years 1944 to 1951. Instead, the records disclose a large corporate profit for 1947 and the earned surplus at the end of the years involved herein, without reflecting petitioners' withdrawals therefrom, were substantial. It is clear therefore that adequate earnings and profits were available from which an ordinary dividend distribution could have been made within the meaning of 115 (a), *supra*.

The respondent's determination is, of course, presumptively correct and it is incumbent upon the petitioners by a preponderance of evidence to establish that the advances in question were not dividends, but rather loans, as they contend. We think it is clear that this burden has not been sustained.

In the light of all the facts and the record as a whole, we are convinced that petitioners' withdrawals during the taxable years 1947 to 1951, inclusive, were not intended to be bona fide loans, but were, in reality, informal dividend distributions within the intendment of section 115 (a), *supra*. *W. T. Wilson*, 10 T. C. 251 (1948); *Regens-*

*burg* v. *Commissioner*, 144 F. 2d 41 (C. A. 2, 1944) affirming a Memorandum Opinion of this Court, April 1943, certiorari denied 323 U. S. 783; *C. W. Murchison, supra.*

Counsel for petitioner William C. Baird argues, in the alternative, that even assuming the withdrawals are deemed to be dividends, $4,800 in each of the taxable years involved herein is not chargeable to him, but should have been included in the gross income of his wife, Dorothy G. Baird, who owned almost half of the outstanding capital stock and who filed a separate income tax return. The record is devoid of any reliable evidence upon which we may base such a finding. As already noted in deciding the primary issue, it is immaterial that all shareholders did not participate in the dividend distribution. *Lincoln National Bank* v. *Burnet, supra.* The burden was upon petitioner William C. Baird to present facts, if there were any, upon which we might determine that $4,800 of the total amount charged to him by respondent in each taxable year was income attributable to his wife. The wife, as a member of the family, may well have benefited from the withdrawals, but there is no evidence that petitioner William C. Baird was acting as agent for his wife in withdrawing and using the funds in question or that the wife ever asserted any right thereto in whole or in part. We hold, accordingly, that no part of the dividend involved herein is to be attributed to Dorothy G. Baird. We think the facts before us differ materially from those presented in *United Mercantile Agencies, Inc.*, 23 T. C. 1105, 1113 (1955).

We come next to the question of respondent's request for increased deficiencies in income taxes by amended answer at the hearing. The real estate transaction in December 1948 and March 1949 which gave rise to respondent's assertion of increased deficiencies is discussed in detail in our Findings of Fact. In essence, respondent asserted that the taxable income of petitioner William C. Baird should have been reduced in the amount of $1,000 in the taxable year 1948 and increased in a like amount in the taxable year 1949 (since all of the earnest money in the amount of $2,000 was paid in December 1948 and debited on his account); and conversely that the taxable income of petitioners Harold J. Baird and Louise R. Baird should have been increased in the amount of $1,000 in the taxable year 1948 and reduced in a like amount in the taxable year 1949. Respondent, on brief, submits that through mistake his answer to the amended petition filed herein sets forth a claim for an increased deficiency due by the petitioner William C. Baird for the taxable year 1948, when the increased deficiency is in fact due for the taxable year 1949 and urges that the error be corrected to reflect the proper increased deficiency asserted for the taxable year 1949. Petitioners offer no objection to the correction of the error in respondent's amended answer and contend only that the withdrawals for the realty transaction were "loans." Since a further

amendment of the answer to correct the error would still be timely (*Helvering* v. *Edison Securities Corporation*, 78 F. 2d 85; C. A. 4, 1935) and since petitioners do not object to such correction, we think it proper, in order to avoid delay, to accept the statements in respondent's brief as an informal additional amendment to his answer. Respondent has produced affirmative evidence establishing the asserted additional deficiencies, and we hold that he has sustained his burden of proof in this respect.

Finally, petitioners resist the determination of deficiencies for the years 1947 and 1948 on the ground that it is barred by the 3-year statute of limitations. As the distributions which are now held to be taxable income, and which were omitted from petitioners' respective returns, are in each instance in excess of 25 per cent of the gross income disclosed on the returns for 1947 and 1948, the provisions of section 275 (c) of the Internal Revenue Code of 1939 are here applicable, extending the period of limitations from 3 years to 5. It is clear from our Findings of Fact that the statutory notices of deficiency transmitted to petitioners for years including 1947 and 1948 were mailed within 5 years after the returns for said years were filed.

*Decisions will be entered under Rule 50.*