Ralph E. Cruser and Betty D. Cruser v. Commissioner.
Cruser v. Commissioner
Docket No. 82148.
United States Tax Court
T.C. Memo 1961-60; 1961 Tax Ct. Memo LEXIS 292; 20 T.C.M. (CCH) 313; T.C.M. (RIA) 61060; February 28, 1961
N. A. Townsend, Jr., Esq., for the petitioners. Richard C. Forman, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income tax and additions to tax of petitioners as follows: Deficiencies
Additions to the Tax,
IRC, 1939
Sec. 294
Sec. 294
Year
Income Tax
(d)(1)(A)
(d)(2)
1953
$6,148.02
$550.98
$367.32
1954
2,382.78
210.05
136.26
1955
846.28
1956
683.21
1957
1,387.77
The issues presented are (1) whether amounts charged to the personal account of Ralph E. Cruser on the books of the Cruser Motor Company from 1953 through 1957 constitute informal dividends, and (2) whether the years 1953 and 1954 are barred by the statute of limitations. Findings *293 of Fact Some of the facts have been stipulated and are found as stipulated. The petitioners are husband and wife and reside at Wake Forest, North Carolina. For the calendar years 1953 to 1957, inclusive, petitioners filed joint income tax returns with the director of internal revenue for the district of North Carolina. The notice of deficiency for the years 1953 through 1957 was mailed to petitioners on May 4, 1959. The petitioners' joint income tax return for 1953 was filed March 15, 1954. Petitioners executed an agreement, Treasury Department Form 872, on February 9, 1959, to extend the statute of limitations for the year 1953 to June 30, 1959. Petitioners' joint income tax return for 1954 was filed on April 15, 1955. The joint income tax return for 1955 was filed on April 16, 1956, which was timely as April 15, 1956 was a Sunday. A Treasury Form 872 was also executed by petitioners to extend the statute of limitations for the year 1955 to June 30, 1959. For the years 1953 and 1954 Petitioners filed no declaration of estimated tax, and the Commissioner concedes that there are no additions to tax due for either year under section 294(d)(2), I.R.C. 1939. Cruser-Tynes Motor *294 Company, hereinafter referred to as Motor Company, was incorporated under the laws of North Carolina on September 23, 1949, and on or about March 23, 1953, the name of the corporation was changed to Cruser Motor Company. The Motor Company was formed to engage in business as an automobile dealer and upon organization it took over the operation of an automobile dealership at Wake Forest, North Carolina, which had theretofore been operated by H. L. Miller under the name of Miller Motor Company. The original four stockholders in Motor Company were W. H. Tynes, W. M. Berlind, R. M. Reynolds, and Ralph E. Cruser, hereinafter referred to as petitioner. Motor Company issued 500 shares of stock of which each of the four stockholders received 125 shares. On December 7, 1951, Berlind and Reynolds sold their 250 shares of stock in Motor Company to petitioner and Tynes and their wives for the following consideration: Certified check of Cruser-Tynes Mo-
tor Co. payable to Reynolds and
Berlind
$20,000.00
Promissory note executed
by Cruser and Tynes pay-
able to Berlind
$3,522.13
Account payable by Berlind
to Cruser-Tynes Motor
Co. assumed by Cruser
and Tynes
2,977.87
6,500.00
Promissory note executed
by Cruser and Tynes pay-
able to Reynolds
$6,177.23
Account payable by Rey-
nolds to Cruser-Tynes Mo-
tor Co. assumed by Cru-
ser and Tynes
322.77
6,500.00
Total
$33,000.00
*295 Petitioner and Tynes secured the $20,000 paid to Berlind and Reynolds in the transaction by jointly executing a promissory note in the amount of $12,000 on December 24, 1951, payable to the Wachovia Bank and Trust Company. This note evidenced the loan of $12,000 and 500 shares of the Motor Company stock was pledged as security. The loan was disbursed by the bank with its check payable to petitioner and Tynes which they then endorsed and deposited in an account of Motor Company. The remaining $8,000 was borrowed by Motor Company on December 24, 1951, from the Wachovia Bank and Trust Company. This loan was secured by a pledge of Motor Company's used car inventory and was repaid by Motor Company. Thereafter petitioner and Tynes each owned 249 shares in Motor Company and their wives one share each. In March 1953 petitioner purchased the shares owned by Tynes and his wife in Motor Company. The consideration for this sale was as follows: Cash
$15,000.00
One-half of balance due on note
to Wachovia Bank (originally
$12,000.00)
2,500.00
One-half of Berlind note assumed
by Cruser (1/2 of $3,522.13)
1,761.07
One-half of Reynolds note assumed
by Cruser (1/2 of $6,177.33)
3,088.61
Account payable by Tynes to Cru-
ser-Tynes Motor Co. assumed by
Cruser
8,127.17
One-half of Berlind account due
Cruser-Tynes Motor Co. assumed
by Cruser
161.38
One-half of Reynolds account due
Cruser-Tynes Motor Co. assumed
by Cruser
1,488.94
Total
$32,127.17
*296 As a result of the purchase of the Tynes's stock, petitioner owned 499 shares in Motor Company and his wife owned the remaining share. At the time of the sale there was a balance of $5,000 due the Wachovia Bank and Trust Company on the $12,000 note executed by petitioner and Tynes in December 1951. The petitioner paid this indebtedness. To obtain the $5,000 paid to the Wachovia Bank and Trust Company and the $15,000 paid to Tynes, petitioner and his wife executed a new note at the Wachovia Bank and Trust Company for $15,000 and petitioner borrowed $5,000 from H. L. Miller. Petitioner increased his weekly salary on March 5, 1953, from $137.50 to $300 in order to provide funds to pay his obligations. The increase remained in effect until June 1953. Also in 1953, the Motor Company declared a dividend of $3,000 which was credited to petitioner's personal account. A bonus of $2,778.50 was paid to petitioner in 1953 which was credited to his personal account and his salary was increased $2,428.20, which amount was also credited to his personal account. Another bonus in the amount of $1,490.50 was paid to the petitioner in 1955 which was credited to his personal account. Also in 1955, *297 petitioner sold a company car for $650, the proceeds of which he retained. The net increases in petitioner's personal account on the books of Motor Company for the years 1953 to 1957, inclusive, were: Year
Net Increases
1953
$11,534.65
1954
9,646.33
1955
3,019.47
1956
4,183.97
1957
5,998.98
The increase of $11,534.65 in 1953 was the aggregate of petitioner's assumption of the indebtedness of Berlind, Reynolds and Tynes to the corporation and the payment of principal and interest on certain personal obligations of the petitioner which was offset by the application of the salary increase, bonus and dividend to the personal account. The 1954 increase of $9,646.33 was attributable to the payment of personal obligations of the petitioner. In 1955 the increase of $3,019.47 represented not only payments against petitioner's personal indebtedness, but also withdrawal of cash and the payment of petitioner's insurance premiums. A bonus received in 1955 was credited to the personal account. Repayments of petitioner's personal obligations, withdrawal of cash, payment of insurance premiums and a loss on the sale of stock comprised the increase of $4,183.97 in *298 1956. In 1957 the increase of $5,998.98 constituted payments of personal indebtedness of petitioner and withdrawals of cash. The Commissioner determined that these net increases in the petitioner's personal account constituted informal dividends which were not reported on the joint income tax returns filed for the years 1953 to 1957, inclusive. Petitioner never executed any notes or other writing evidencing an obligation to the Motor Company and no interest was ever paid on the alleged indebtedness. Throughout the period at issue, 1953 to 1957, inclusive, Motor Company had sufficient current and accumulated earnings and profits to encompass the amounts in the Commissioner's determination. Ultimate Findings of Fact The net increases in the personal account of petitioner on the books of Motor Company from 1953 to 1957, inclusive, constitute informal dividends. In 1954 the petitioner omitted amounts in excess of 25 per cent of the gross income reported on his 1954 return. Opinion The question of whether the withdrawals constituted loans as contended by petitioner or distributions as contended by the Commissioner is primarily factual to be resolved in light of all the *299 evidence presented and depends upon the intent of the parties at the time the withdrawals are made. Wiese v. Commissioner, 93 F. 2d 921 (C.A. 8, 1938), certiorari denied 304 U.S. 562 (1938), rehearing denied 304 U.S. 589 (1938); Clark v. Commissioner, 266 F. 2d 698 (C.A. 9, 1959), affirming a Memorandum Opinion of this Court; Victor Shaken, 21 T.C. 785 (1954). After examining the evidence from all viewpoints, we are convinced that the evidence supports but one conclusion, that the petitioner had no intention of repaying the Motor Company and that the withdrawals constituted dividends [1] by the corporation to the petitioner. Clark v. Commissioner, supra; Regensburg v. Commissioner, 144 F. 2d 41 (C.A. 2, 1944), affirming a Memorandum Opinion of this Court, certiorari denied 323 U.S. 783; Ben R. Meyer, 45 B.T.A. 228 (1941); W. T. Wilson, 10 T.C. 251 (1948), affd. on another issue, 170 F. 2d 423 (C.A. 9, 1948); William C. Baird, 25 T.C. 387 (1955). Cf. Rollin C. Reynolds, 44 B.T.A. 342 (1941); Carl L. White, 17 T.C. 1562 (1952); *300 Victor Shaken, supra; Al Goodman, Inc., 23 T.C. 288 (1954); Estate of Helene Simmons, 26 T.C. 409 (1956); Estate of Isadore Benjamin, 28 T.C. 101 (1957). *301 The fact that the withdrawals were never treated as dividends by either the petitioner or the corporation has little significance. In regard to such a contention in Clark v. Commissioner, supra, the Court of Appeals held at p. 711 To constitute a distribution taxable as a dividend, the benefit received by the shareholder need not be considered as a dividend either by the corporation or its shareholders, declared by the board of directors, nor other formalities of a dividend declaration need be observed, if on all the evidence there is a distribution of available earnings or profits under a claim of right or without any expectation of repayment. See also Paramount-Richards Th. v. Commissioner, 153 F. 2d 602 (C.A. 5, 1946), affirming a Memorandum Opinion of this Court and William C. Baird, supra. The petitioner places much emphasis upon the corporation's accounting treatment of the withdrawals which it recorded as loans on its books, financial statements and income tax returns. Although from a pure accounting standpoint an indebtedness existed on the books of the corporation it is not controlling without further evidence substantiating *302 the existence of a bona fide debt. Helvering v. Midland Ins. Co., 300 U.S. 216 (1937); Chattanooga Sav. Bank v. Brewer, 17 F. 2d 79 (1927), certiorari denied 274 U.S. 751 (1927); Ben R. Meyer, supra; William C. Baird, supra. The payments made upon the indebtedness in 1953 and 1955 by the petitioner also add little weight to his contention when we consider that a special dividend was declared, a bonus was given, and his salary was doubled to provide funds for such repayments and that the withdrawals in both 1953 and 1955 exceeded the amounts credited to the account. Payments, including interest payments, were made in Ben R. Meyer, supra; however in holding that the withdrawals were distributions we said at p. 240 The fact that the payments, including payments designated as "interest", made to Limited by petitioners were credited on their respective accounts on Limited's books is not persuasive evidence that the withdrawals constituted debts of the petitioners. In all of the taxable years, except 1934, the withdrawals by each petitioner exceeded the amounts paid by such petitioner to Limited and the net *303 result in each of those years was that the debit balance of the account of each petitioner was not reduced, but the total net withdrawals steadily increased from year to year. See William C. Baird, supra. In Al Goodman, Inc., supra, a case cited by petitioner, in which we held that the withdrawals represented loans we based our decision in part upon the fact that there were "consistent repayments by petitioners of their withdrawals." We find no such "consistent repayments" here and we do not think the payments in 1953 and 1955 are sufficient to offset the other strong indicia of a distribution of earnings. William C. Baird, supra.
A further fact supporting our holding in Goodman was that petitioners "at all times had ample resources with which to satisfy any debit balances in their accounts." The petitioner here testified that he did not possess sufficient funds to satisfy the indebtedness and that the corporation was his only source of deriving such amounts. Additional factors such as the absence of interest payments, the want of a note or other written agreement evidencing an obligation and definite date of repayment and the lack of *304 any type security arrangement although not conclusive, when considered in conjunction with the adequacy of the earnings and profits at all times as well as the petitioner's absolute control over the corporate affairs, form a solid foundation to support our holding. Clark v. Commissioner, supra; Ben R. Meyer, supra; William C. Baird, supra. Petitioner also argues that the Commissioner erred in computing the amount of withdrawals in 1953 by including amounts owing the corporation by Berlind, Reynolds and Tynes which were assumed by petitioner. Petitioner submits that such treatment is erroneous since the mere debiting of his account with amounts owed to the corporation by others cannot represent income to him. We do not agree with the proposition advanced by the petitioner in light of our holding that the amounts in petitioner's personal account did not constitute loans but were rather informal dividends. The evidence shows that the indebtednesses of Berlind, Reynolds and Tynes were valid obligations owed to the corporation and the assumption by petitioner formed a part of the consideration paid for their stock. The debts assumed were charged *305 by the corporation to the petitioner's personal account which we hold he never intended to repay and made the transaction in effect an assumption by the petitioner of the debts of Berlind, Reynolds and Tynes and a cancellation of these debts by the corporation. The rule is well settled that a cancellation of a shareholder's indebtedness to a corporation is a dividend. Cohen v. Commissioner, 77 F. 2d 184 (C.A. 6, 1935). The remaining issue for decision is whether the Commissioner's determination of deficiencies for the years 1953 and 1954 is barred by the 3-year statute of limitations. The petitioner concedes that 1953 is not barred. In respect to 1954 the petitioner received the statutory notice within 6 years after the return for 1954 was filed. Our holding that the withdrawals were distributions so increases the taxable income of petitioner for 1954, that it easily can be seen that the amounts omitted were in excess of 25 per cent of the gross income reported on his 1954 return. Under such circumstances, section 6501(e), I.R.C. 1954 extends the period of limitation to 6 years. William C. Baird, supra; Schalk Chemical Co., 32 T.C. 879 (1959). *306 Accordingly, the additions to tax under section 294(d)(1)(A), I.R.C. 1939, are sustained. At the trial the Commissioner conceded the additions to tax under section 294(d)(2). Acker v. Commissioner, 361 U.S. 87 (1959). Decision will be entered under Rule 50. Footnotes
1. SEC. 115. DISTRIBUTIONS BY CORPORATIONS. (I.R.C. 1939) (a) Definition of Dividend. - The term "dividend" when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * * SEC. 116. DIVIDEND DEFINED. (I.R.C. 1954) (a) General Rule. - For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders - (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. * * *↩