A. John Cohen v. Commissioner.
Cohen v. Commissioner
Docket No. 91263.
United States Tax Court
T.C. Memo 1963-234; 1963 Tax Ct. Memo LEXIS 110; 22 T.C.M. (CCH) 1189; T.C.M. (RIA) 63234; August 29, 1963
*110 Held, withdrawals of funds by petitioner from his wholly owned corporation were distributions tributions of earnings and profits, taxable as dividends, rather than loans as they were characterized on the corporation's books. John M. Doukas, for the petitioner. Robert B. Dugan, for the respondent. PIERCE *111 Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined deficiencies in the income taxes of the petitioner for the taxable calendar years 1956, 1957 and 1958 in the following amounts: Year
Deficiency
1956
$14,821.93
1957
4,984.23
1958
4,918.74
The sole question for decision is whether withdrawals by the petitioner from his wholly-owned corporation *112 during the years involved, which were treated as loans to officers on the corporation's books of account, were in fact loans; or whether such withdrawals actually represented informal dividends to the extent of available earnings and profits. Findings of Fact Most of the facts were stipulated. The stipulation of facts, together with the exhibits identified therein, is incorporated herein by reference. The petitioner, A. John Cohen, is an unmarried individual, residing in Brookline, Massachusetts. He filed an individual Federal income tax return for each of the taxable calendar years here involved (1956, 1957 and 1958) with the district director of internal revenue at Boston. Petitioner has been in the insurance business since 1939. From that year and through 1954, he was employed by James Simpson and Company, a corporation that operated an insurance agency. After terminating his connection with the Simpson company at the end of 1954, petitioner formed a Massachusetts corporation, A. John Cohen Insurance Agency, Inc. (hereinafter called "the corporation"). The corporation's issued and outstanding stock (100 shares of common) has at all times been owned by petitioner, who is *113 also a director and its president and treasurer. The other directors are a sister and a nephew of the petitioner. The sister serves as clerk and assistant treasurer; and the nephew is a practicing attorney in New York City, having no connection with the corporation other than his directorship. The corporation has no vice president. The corporation operates a general insurance agency in Boston, representing several insurance companies, including Lloyds of London. Petitioner paid in $3,500 for his stock interest at the time the corporation was formed; and such amount constituted its paid-in capital throughout the taxable years. As a general agent, the corporation is empowered to write binding policies of insurance (including life, fire and other casualty) on behalf of its principals. It is billed by its principals for the total amount of the premiums due on the policies which it writes. The corporation then remits to the principals the net premiums due, i.e., gross premiums less its commissions for writing the policies. The corporation thereupon sets up accounts receivable from the policyholders for the amounts of the currently due gross premiums; and retains the entire proceeds when *114 such receivables are collected. During the taxable years, commissions earned were almost its only source of income. [1] Petitioner was paid an annual salary by the corporation of approximately $26,000, for each of the taxable years involved. During 1955, and the three succeeding years which are here involved, petitioner made periodic withdrawals of funds from the corporation. Most of such withdrawals were by means of corporation checks drawn payable to the order of petitioner; but in a few instances, said withdrawals were by means of corporate payments to third parties on behalf of petitioner. Such withdrawals were in most instances charged to an asset account on the corporation's books, entitled "Loans Receivable - Officers." However, in a few instances the initial charge was to another asset account, "Accounts Receivable - A. J. Cohen"; and at the end of *115 the year, the balance therein was transferred to the above-mentioned "Loans Receivable - Officers" account. The withdrawals for 1955 totaled $8,656.01. The following table shows the amounts charged to said account, by month, for each of the taxable years 1956, 1957 and 1958 1956
1957
1958
Jan.
$11,350.00
$3,000.00
Feb.
3,165.00
$ 10.20
Mar.
9,000.00
1,000.00
300.00
April
300.00
5,000.00
2,050.00
May
3,000.00
500.00
June
1,662.25
1,124.40
318.07
July
1,200.00
Aug.
1,000.00
Sept.
2,728.00
1,124.38
Oct.
Nov.
600.00
Dec.
131.18
45.41 [2]
428.17
1,533.73 [1]
1,173.07 [1]
117.73 [3]
1,861.76 [1]
1,325.50 [4]
Total
$35,070.16
$10,077.46
$9,901.23
The only repayments made by petitioner on the loans *116 receivable account were: Cash repayment of $3,149.90 in April 1956 [2]; a credit to the account for a portion ($6,388) of petitioner's 1956 salary in October 1956; and a credit to said account for $1,950 in March 1957, representing the trade-in allowance granted by an automobile dealer to the corporation upon its purchase of a new automobile, for a used automobile which theretofore had belonged to petitioner individually. Taking into consideration the above-mentioned withdrawals and repayments, the balance in the "Loans Receivable - Officers" account at December 31 of each of the years 1955 through 1958, was as follows: December 31
Account balance
1955
$ 8,656.01
1956
32,623.57
1957
40,751.03
1958
50,652.26
Petitioner gave to the corporation no promissory note or any other instrument evidencing the "loans" *117 which he made. The corporation neither charged nor received any interest on any of said "loans." Neither the petitioner nor the corporation had any fixed or systematic plan for the repayment of such "loans." Petitioner utilized the funds which he withdrew from the corporation for such personal uses of his own as: Payment of his individual income taxes; investments in the stocks of other corporations; personal travel; and assistance to members of his family (as for example, financial assistance to nephews in securing their education). No portion of the funds withdrawn by petitioner was used to defray the corporation's expenses. The board of directors of the corporation has never declared, and the corporation has never paid, a formal dividend. The accumulated earned surplus and undivided profits of the corporation at December 31, 1955, were $19,927.25. Its earnings and profits for each of the years 1956 through 1958 (reflecting its taxable income for each year after uncontested adjustments thereto by the Commissioner, less its agreed Federal tax liability, and less the amount of its charitable deductions in excess of the 5 percent limitation on deductibility imposed by section *118 170(b)(2) of the 1954 Code) were: Earnings and
Year
Profits
1956
$ 7,562.19
1957
9,667.02
1958
11,709.75
The corporation's accumulated earned surplus and undivided profits at December 31 of each of the years 1955 through 1958 were: December 31
Amount
1955
$19,927.25
1956
27,489.44
1957
37,156.46
1958
48,866.21
The petitioner, in his Federal income tax returns, did not report any, dividends received from the corporation for any of the years here involved. The respondent, upon audit of petitioner's returns, determined that petitioner had received "dividends" from the corporation in amounts shown in the following schedule, taken from the statutory notice of deficiency herein. 1956
1957
1958
Loans to officers during taxable year
$35,070.16
$10,077.46
$ 9,901.23
Less: Excess of 1956 credits over opening bal-
ance ($11,102.60 minus $8,656.01)
(2,446.59)
1957 credit presumed to be payment toward
1956 balance
(1,950.00)
Increase in loans
$30,673.57
$10,077.46
$ 9,901.23
Taxable to extent of earnings
$25,969.84
$ 3,257.78
$ 9,901.23
Paid by corporation for benefit of officer: Travel, entertainment, selling, automobile
expenses (agreed adjustments)
1,519.60
2,779.24
1,594.16
Legal expenses
0.00
3,630.00
0.00
Total additional income
$27,489.44
$ 9,667.02
$11,495.39
*119 The parties have agreed, in their stipulation of facts herein, that the amounts shown in the above schedule as having been expended for petitioner's travel and related expenses, and for his legal expenses, were "agreed corporate expenditures for the benefit of A. John Cohen." The respondent, in his brief, has made the following concession: Respondent has altered the computation of dividend income from that appearing in the statutory notice of deficiencies. Respondent concedes that withdrawals made in the year 1955 (which year is not before the Court) should not be carried forward to the year 1956 thereby increasing the net withdrawals in 1956. Accordingly certain "repayments" made during 1956 have been applied against withdrawals from the corporation made during 1956. In the computation of the deficiencies appearing in the statutory notice of deficiencies such "repayments" were first applied against the balance of the "loan" account as it existed on December 31, 1955. The following reflects the "dividends" determined by respondent to have been received by the petitioner from the corporation during the taxable years, in the light of the foregoing concession: 1956
1957
1958
Withdrawals during taxable year
$35,070.16
$10,077.46
$ 9,901.23
Less: Credits
11,102.60
1,950.00 *
Net withdrawais
$23,967.56
$ 8,127.46
$ 9,901.23
Withdrawals taxable to extent of earnings and
profits
$23,967.56
$ 8,127.46
$ 9,901.23
Add: Agreed expenditures for benefit of peti-
tioner
1,519.60
6,409.02
1,594.16
Total current distribution
$25,487.16
$14,536.48
$11,495.39
*120 Ultimate Finding of Fact The net amount of the withdrawals of funds by petitioner from A. John Cohen Insurance Agency, Inc., in each of the years 1956, 1957 and 1958, in the amounts of $23,967.56, $8,127.46, and $9,901.23, respectively, was a distribution of earnings and profits of the corporation, rather than a loan, to the extent of the corporation's accumulated earned surplus and undivided profits existing at the end of each year. Opinion Both parties agree that whether the withdrawals made by petitioner from his whollyowned corporation were loans, or contrariwise were disguised distributions of earnings and profits (i.e., informal dividends) is a question of fact. Chism v. Commissioner, (C.A. 9) F. 2d , affirming a Memorandum Opinion of this Court; Wiese v. Commissioner, (C.A. 8) 93 F. 2d 921, 923, affirming 35 B.T.A. 701, certiorari denied 304 U.S. 562; William C. Baird, 25 T.C. 387, 393. As is perhaps true in this and most other types of fact *121 cases, the record here contains evidence tending to favor the position of each of the parties. We have, after a careful consideration and weighing of all the evidence, concluded that the evidence pointing to a classification of the withdrawals as distributions of earnings and profits preponderates; and we have accordingly made an ultimate finding of fact to that effect. That ultimate finding of fact disposes of the case in the respondent's favor. To be sure, a corporation may lend its funds; and it may lend them to a stockholder, even to a sole stockholder. However, where a corporation's sole stockholder makes withdrawals, which are characterized on the corporate books and records as loans, the transactions require a special scrutiny, lest what in reality are merely distributions of available earnings and profits which would be taxable to the distributee as ordinary income, be masked as loans of money which, if genuinely so, would represent nontaxable receipts to the distributee. The basic question is whether there was an intention to repay the withdrawals at the time they were made. Chism v. Commissioner, supra, Wiese v. Commissioner, supra, p. 923. In the instant *122 case, petitioner gave no notes or any other instrument to evidence his indebtedness. There was no fixed or systematic plan for the repayment of the claimed "loans." Petitioner did not pay, nor did the corporation demand, any interest on the purportedly borrowed funds. It is to be observed also, that the net withdrawals of each year are approximately the same as the accumulated earned surplus and undivided profits at the end of each year, indicating to us that the petitioner was pulling out available earnings and profits. The uses to which petitioner applied the funds withdrawn were such apparently recurring personal items as payment of his individual income taxes, and giving financial assistance to members of his family, so that we can not say that the withdrawals were "one-shot" transactions to meet nonrecurring emergencies. We stated above that there was evidence which might point to loans. The corporation did carry a loans receivable account on its books; petitioner did make three relatively small "repayments"; and he did testify at the trial that he intended some day to repay all the "loans" when he could. The fact that the withdrawals are shown on the corporation's books as *123 a receivable is by no means conclusive that the withdrawals were loans. William C. Baird, supra, p. 395; Elliott J. Roschuni, 29 T.C. 1193, 1203, affd. (C.A. 5) 271 F. 2d 267, certiorari denied 362 U.S. 988. And where (as was true in the instant case) the withdrawals were made over a span of years with increasingly larger "loan" balances and only negligible repayments, those circumstances are inconsistent with an intention to borrow and repay. See William C. Baird, supra, p. 394. We have accorded but slight weight to the petitioner's self-serving testimony at the trial that he intended to repay some time, where there are so many other objective indications to the contrary. In the light of all the foregoing, we hold, in accordance with our ultimate finding of fact, that the net withdrawal of funds by the petitioner in each of the taxable years was a distribution of earnings and profits to the extent of the corporation's accumulated earned surplus and undivided profits at the end of each year. These net withdrawals were: $23,967.56, $8,127.46 and $9,901.23 for the years 1956, 1957 and 1958, respectively. To these amounts *124 there must be added, in determining petitioner's tax liability, the agreed corporate expenditures for benefit of the petitioner, as set out in the last schedule of our findings of fact, in the amounts of $1,519.60, $6,409.02 and $1,594.16 for the years 1956, 1957 and 1958, respectively. Accordingly, the total current distributions by the corporation to the petitioner in each of the years was: 1956
1957
1958
Net withdrawals
$23,967.56
$ 8,127.46
$ 9,901.23
Agreed expenditures for petitioner's benefit
1,519.60
6,409.02
1,594.16
Total current distribution
$25,487.16
$14,536.48
$11,495.39
In the computation under Rule 50 to be made herein, the parties are directed to treat these total current distributions as taxable dividends to the extent of the corporation's accumulated earned surplus and undivided profits at the end of each year (sections 301(c)(1) and 316(a) of the 1954 Code). To the extent that the total current distribution for any year exceeds the accumulated earned surplus and undivided profits at the end of said year, the excess shall be first applied against and reduce petitioner's adjusted basis for his stock in the corporation (section *125 301(c)(2)); and if this should reduce the adjusted basis for such stock to zero, any remaining excess of current distribution is to be treated as gain from the sale or exchange of property (section 301(c)(3)(A)). Decision will be entered under Rule 50. Footnotes
1. According to the corporation's Federal income tax returns, all of its income for 1957 and 1958 was derived from commissioners; but for 1956, the return includes "other income" of $1,659.38. Commissions reported on said returns were: $81,740.86, $80,082.13, and $85,254.80, for the years 1956, 1957, and 1958, respectively.↩
2. Journal entry to correct posting error. ↩
1. Journal entry transferring balance of "Accounts Receivable - A. J. Cohen" to "Loans Receivable - Officers." ↩
3. Journal entry reclassifying insurance premiums paid for A. John Cohen from "Insurance Expense" to "Loans Receivable - Officers." ↩
4. Journal entry reclassifying personal legal expenses from "Legal & Audit Expense" to "Loans Receivable - Officers."↩
2. The stipulation of facts states that at the same time that the above-mentioned $3,149.90 repayment was made by petitioner, another repayment ($1,064.70) was made by petitioner's sister, the clerk and assistant treasurer of the corporation. The "Loans Receivable - Officers" account was thus credited with the total amount of $4,214.60 in April 1956.↩
*. Although the 1957 repayment is not mentioned in the concession set forth above, the respondent apparently also concedes that it should be used to offset 1957 withdrawals.↩