J. J. HART, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9154.   Promulgated July 31, 1947.

*Benjamin H. Booth, Esq.*, for the petitioner.
*Thomas R. Charshee, Esq.*, for the respondent.

---

138

OPINION.

BLACK, *Judge*: As has already been stated in our preliminary statement, the Commissioner, in his determination of the deficiencies, disallowed $14,000 of the deduction which petitioner took on its income tax return for 1941 as compensation paid or incurred to its four officers, stating that "To the extent disallowed, it is held that the claimed deduction does not represent an ordinary and necessary business expense paid or incurred during the taxable year within the meaning of Section 23 (a) and 24 (c) of the Internal Revenue Code."

It will be noted that the Commissioner in his determination of the deficiencies did not raise the point of the reasonableness of the salaries paid or incurred by the petitioner to its officers during the taxable year. However, both parties have treated the reasonableness of the salaries as one of the main issues in the case, and at the hearing much of the evidence which was received was devoted to that issue.

Neither at the hearing nor in his brief did respondent discuss section 24 (c) of the code. Therefore, we shall treat that section of the statute as not being involved in the case.

Respondent, in his brief, states the issues involved as follows:

1. Where in addition to the salaries of officers of petitioner, who are the sole stockholders, which were paid in cash stock which was not shown to have any value, was issued to these officers in exact proportion to the stock already owned by them, is the amount deductible limited to the amount paid in cash?

2. In the alternative, if the Court should hold that the amount deductible is not limited to the amount paid in cash, should the amount of $14,000.00 be disallowed as a deduction on the ground that it represents excessive compensation?

This, we think, is a fair statement of the issues as raised by the pleadings and as they now exist in this proceeding.

As stated above, the Commissioner in his determination of the deficiencies allowed petitioner a deduction for all the cash which it paid the four officers in 1941, amounting to $18,727.48. In arguing his contention No. 1, the substance of respondent's contention seems to be about this: That the resolution adopted by petitioner's board of directors January 2, 1941, did not fix a definite salary liability of $33,000 on the part of petitioner to the four officers in question, but provided only that the salaries should not exceed the amounts fixed opposite the names of the respective officers; and that under such a resolution the only amount that petitioner could deduct as salaries for these officers was the amount of $18,727.48 actually paid them in cash. It is respondent's further contention that the resolution of December 15, 1941, still did not create a definite salary liability in the amounts mentioned in the original resolution of January 2, 1941, but only provided for a stock distribution to the four officers in question, and that, inasmuch as petitioner has not proved the fair market value of the stock at the time set apart for these officers, December 15, 1941, petitioner is not entitled to any deduction by reason of the stock distribution, even though it is on an accrual basis.

At this point we may remark that no stock was issued to Thomas Opdyke, one of the parties mentioned in the resolution of January 2, 1941, and we have no issue as to the deductibility of the salary paid to him, whatever it was.

We shall discuss the foregoing contentions made by respondent. We agree with respondent that the resolution of January 2, 1941, did not create a liability of any definite amount on the part of petitioner to the officers named therein. If nothing more had been done, it seems reasonable to assume that all petitioner would have been entitled to deduct as salaries paid or incurred to these four officer-employees would have been the cash which was actually paid to them in 1941. But this resolution must be read in conjunction with the one which was adopted December 15, 1941, and, when this is done, we think that a reasonable construction to be given the two resolutions together is that John J. Hart was to be paid a salary of $18,000, and Morris Katz, Fred Whitehead, and Harry Abrams were to be paid salaries of $5,000 each, and that whatever part of the salaries had not been paid to each in cash should be paid to them in stock of the corporation during the month of December 1941.

Respondent cites *Package Machinery Co.*, 28 B. T. A. 980, for the proposition that the basis for the deduction for stock issued as compensation for services is the fair market value of the stock as of the date of issue. That case so holds. Among other things, our opinion

in that case said: ".This liability must, of course, for the purposes of the tax, be translated into dollars and cents; and we have consistently held that the translation must be based upon the fair market value of the stock as of the date of issue." Respondent argues that we have no evidence of the fair market value of the stock of petitioner at the end of the year 1941 and, therefore, we should not allow petitioner, on the accrual basis, any deduction for the value of the stock which it was obligated to issue to these officers under the provisions of the resolution of December 15, 1941.

It is true that we have no direct testimony in the record of what the fair market value of this stock was at the time in question. The stock was closely held and there had been no sale of any of the shares subsequent to the organization of the corporation in 1940. However, we do have this much evidence in the record which it seems to us bears upon the value of the stock on the basic date: Petitioner was organized in September 1940, taking over a business then operated by John J. Hart as a sole proprietor; the incorporators paid $1,000 per share for the 35 shares which were issued, either in money or property; the business had been operated successfully both before and after its incorporation; the balance sheet of petitioner as of December 31, 1941, showed the $14,000 stock here involved as outstanding and showed earned surplus and undivided profits of $4,176.56 after taking into account the $35,000 capital stock which was outstanding at the beginning of the year, plus the $14,000 capital stock here in question; and the 4 officers agreed to accept these shares, which were to be issued to them at $400 per share, in payment of the balance of their salaries tentatively fixed by the resolution of January 2, 1941, and they returned the full amount of these salaries, including the cash received and the shares of stock at $400 per share, for taxation on their income tax returns for the year 1941. The book value of the shares was in excess of $700 per share. Therefore, on the strength of this evidence, we have found in our findings of fact that these shares had a fair market value of at least $400 per share in the latter part of December 1941. We hold, therefore, that petitioner is entitled to a deduction of the $14,000 in question unless some part or all of it represented excessive compensation.

This brings us to respondent's alternative contention, No. 2, which is that the full $14,000 should be disallowed because it represents excessive compensation. In his deficiency notice respondent did not break down this $14,000 as to the four officers, but at the hearing he did so, and we have given this breakdown in our findings of fact.

Mertens, in his Law of Federal Income Taxation, vol. 4, sec. 25.51, says:

\* \* \* In determining whether the particular salary or compensation payment is reasonable, the situation must be considered as a whole. Ordinarily no single factor is decisive. There are various tests which have been commonly applied in determining the reasonableness of the particular salary or compensation, such as the ratio of the particular salary and the aggregate salaries to gross income, the size of the particular business, the extent and scope of the employees' work, the employees' qualifications and contributions to the business venture, amount of salaries paid to the particular employee in prior years, general economic conditions, prevailing salaries paid to employees performing similar services in a comparable enterprise, the availability of others to fill the office held by the particular employee, and salary policy of the corporation as to all employees. \* \* \*

We have considered the foregoing factors, in so far as covered by the evidence in the record, in arriving at our conclusion of reasonable salaries, which conclusion has been embodied in our findings of fact. Not all of the factors mentioned in the above quotation from Mertens are represented in the evidence which is before us. Indeed, it is rare where we have all of such factors represented by the evidence in any case. But in the instant case we do have considerable evidence bearing upon the reasonableness of the salaries of these four officers and it is upon a careful consideration of this evidence that we have made our findings of fact.

It is true, as petitioner urges in its brief, that petitioner did a large volume of business in 1941; that these four officers devoted all of theii time to the business and held responsible and important positions with petitioner; and that the salaries paid and incurred by petitioner to them seem reasonable in amount when compared to the total volume of business which petitioner did in 1941.

It is also true, as respondent points out in his brief, that, although petitioner did a large volume of business in 1941, amounting to $1,250,-000, it had a net profit of only $4,053.37 after the deduction of salaries and other expenses, that it paid no dividends in 1941, and that it failed to show the salaries paid to these particular employees in prior years either by petitioner as a corporation or by J. J. Hart as a sole proprietor.

After taking all factors into consideration we have concluded that compensation to J. J. Hart of $1,000 per month, or $12,000 for the year, and $400 per month to each of the other three officers, Katz, Whitehead, and Abrams, or $4,800 for the year to each, would be reasonable, and we have so found in our findings of fact. These amounts should be used in a recomputation under Rule 50.

*Decision will be entered under Rule 50.*