Isaac Engel Realty Co., Inc. v. Commissioner. Isaac Engel v. Commissioner. Sadie Engel v. Commissioner.
Issac Engel Realty Co. v. Commissioner
Docket Nos. 89914-89916.
United States Tax Court
T.C. Memo 1963-273; 1963 Tax Ct. Memo LEXIS 72; 22 T.C.M. (CCH) 1372; T.C.M. (RIA) 63273; October 2, 1963
George R. Sherriff, for the petitioners. Edward H. Hance, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in these consolidated cases, as follows: Docket
Taxable Year
No.
Name
ended
Deficiency
89914
Isaac Engel Realty Co., Inc.
Dec. 31, 1955
$ 827.96
89915
Isaac Engel
May 31, 1956
9,069.13
89916
Sadie Engel
Dec. 31, 1955
1,776.70
Certain portions of respondent's determinations of *73 deficiencies were not placed in issue by the petitions. The only issues are (1) whether the withdrawals by petitioners Isaac and Sadie Engel from their wholly-owned corporation constituted dividends year 1955 in the case of Sadie Engel, and (2) whether salaries taxable to them as ordinary income in the taxable year ended May 31, 1956 in the case of Isaac Engel and in the calendar year 1955 in the case of Sadie Engel, and (2) whether salaries deducted by Isaac Engel Realty Co., Inc. in the year 1955 in the amounts of $10,000 and $3,000 with respect to Isaac and Sadie Engel were excessive to the extent of $2,000 and $500, respectively. Findings of Fact Some of the facts were stipulated and they are found accordingly. The income tax returns of the petitioners for 1955 for Sadie Engel and the corporation, and the return for Isaac Engel for the period ended May 31, 1956, were filed with the district director of internal revenue, Lower Manhattan District, New York. Isaac Engel Realty Co., Inc. was organized under the laws of the State of New York on January 2, 1946, since which time it has been engaged in the ownership, rental and management of improved real estate in New York City, *74 New York. The properties owned and managed from time to time have consisted of apartment houses, office buildings, stores and loft buildings. From its incorporation Isaac Engel has owned 51 percent and Sadie Engel has owned 49 percent of the issued and outstanding common stock. No other stock has been issued. Isaac Engel has had general charge of conducting the business and affairs of Isaac Engel Realty Co., Inc. since its organization and has been its president at all times. He was paid $10,000 salary in 1955. Sadie, his wife, is vice-president of the corporation and since incorporation has performed various miscellaneous duties assisting Isaac Engel. She was paid $3,000 salary in 1955. Isaac Engel received a salary in the amount of $8,000 from Isaac Engel Realty Co., Inc. in each of the years 1950 to 1954, inclusive. He received a salary of $8,000 in 1956 and in 1957 he received a salary of $7,166. Sadie Engel rendered part-time services to Isaac Engel Realty Co., Inc. in the year 1955. Isaac Engel Realty Co., Inc. deducted $3,000 as salary paid to Sadie Engel in the year 1955, whereas Sadie Engel reported only $2,500 as salary from Isaac Engel Realty Co., Inc. in the year 1955. *75 Compensation was paid to both officers through a drawing account on the books of the corporation. In Docket No. 89914 the respondent has disallowed deduction by the corporation of $2,000 of the $10,000 compensation paid to Isaac Engel in 1955 as excessive. In Docket No. 89914 the respondent has disallowed deduction by the corporation of $500 of the $3,000 compensation for services paid to Sadie Engel in 1955 as excessive, and in Docket No. 89916 has treated said $500 as a dividend paid to Sadie Engel. From its organization in 1946 there have been loan accounts carried on the corporation's books and records showing loans by Isaac and Sadie Engel to the corporation and repayments thereon, also loans by the corporation to Isaac and Sadie Engel and repayments on account thereof. The records of the corporation show the following balances in the loan account as of the end of each year. Loans
Receivable
Loans
from
Payable to
Year Ended
Isaac Engel
Isaac Engel
Dec. 31, 1946
$17,613.16
Dec. 31, 1947
34,863.52
Dec. 31, 1948
49,017.64
Dec. 31, 1949
53,304.08
Dec. 31, 1950
5,637.47
Dec. 31, 1951
10,762.06
Dec. 31, 1952
17,789.45
Dec. 31, 1953
3,563.44
Dec. 31, 1954
$10,168.83
Dec. 31, 1955
18,116.39
Dec. 31, 1956
34,510.67
Dec. 31, 1957
38,287.90
*76 The books and records of the corporation reflect many payments as compensation to Isaac and Sadie Engel designated as drawing account. Said records also reflect many other entries showing transactions in and out of the loan account. During the year ended May 31, 1956, Isaac drew $22,937.41 in excess of salary from the corporation and said sum was treated as loans by the corporation. During the year ended December 31, 1955, Sadie drew $7,276.41 in excess of salary and said sum was treated as a loan by the corporation. Respondent's adjustment determined the above sums taxable as divided income to Isaac and Sadie under section 316, Internal Revenue Code of 1954. The office and place of business of Isaac Engel Realty Co., Inc. has at all times pertinent been located at the Engel's home at 208 Amherst Street, Brooklyn, New York. At the end of 1959 balances of loans due by Isaac and Sadie Engel to the corporation aggregated $40,413.74. Isaac and Sadie who jointly owned the property at 208 Amherst Street, Brooklyn, New York, jointly deeded the property to the corporation on January 12, 1960. The minutes of the corporation of January 12, 1960 show the following: *77 In view of the fact that the loan account of Sadie Engel and Isaac Engel show present a balance due to the Corporation by Isaac Engel and Sadie Engel of $40,413.74 by reason of loan to them, whereas Isaac Engel and Sadie Engel propose to pay said loan in full by deeding to the said corporation their personal resident at 208 Amherst Street, Brooklyn 35, N. Y., which has a present estimated value of $65,000, subject to a mortgage of $20,000; resolved that the corporation shall receive from Isaac and Sadie Engel the deed to said real estate and shall credit to the respective loan accounts the sums of $40,000; each loan out of which will satisfy [satisfy] said loans in full. The balance of the equity value of real estate shall repesent [represent] loans to the corporation by Isaac and Sadie Engel in the amounts of $45,000 respectively. Isaac Engel and Sadie Engel did not execute notes payable to the Isaac Engel Realty Co., Inc. covering the sums withdrawn by them. There were no terms of repayment with respect to the alleged loans by Isaac Engel and Sadie Engel. Isaac Engel Realty Co., Inc. owned the following properties in 1955: 23 E. 20th Street, New York City 1816 Madison *78 Avenue, New York City 489 Broadway, New York City 442 Broome Street, New York City The property at 1816 Madison Avenue, New York City, was sold by Isaac Engel Realty Co., Inc. on June 30, 1955. The gross income from rents reported by Isaac Engel Realty Co., Inc. for the year 1955 was $30,571.08. Isaac Engel Realty Co., Inc. reported earned surplus as of December 31, 1955 in the amount of $43,331.85. Isaac Engel Realty Co., Inc. had cash as of December 31, 1955 in the amount of $61,412.11. Opinion The first issue is whether the withdrawals by Isaac and Sadie from their family-owned corporation are to be treated as dividends or loans. The issue is one of fact and the question is whether there was, at the time of withdrawals, an intent on the part of the Engels to repay. Chism's Estate v. Commissioner, (C.A. 9) - F. 2d - (July 30, 1963), affirming a Memorandum Opinion of this Court; Wiese v. Commissioner, (C.A. 8), 93 F. 2d 921, affirming an Opinion of this Court, certiorari denied 304 U.S. 562; and WilliamC. Baird, 25 T.C. 387, 393. The burden of proof was on Isaac and Sadie Engel. Their evidence consists of the testimony of Isaac, who *79 was the only witness, to the effect that he and his wife made loans and the fact that the sums were recorded as loans on the corporation's books. Isaac testified he and his wife would merely make withdrawals from the corporation funds as they needed personal funds. He testified that somehow the check stubs for these withdrawals carried the information as to whether the amounts of the checks were to be recorded in the withdrawal or loan account. The accountant, who came quarterly, made the actual book entries in accordance with what he learned from the check stubs. There were no notes. It was Isaac's testimony that the loans were made at different intervals without any restrictions or dates of payments. He testified the corporation paid no dividends. Petitioners argue their position is sustained by the early history of the loan account when it shows loans by them to the corporation and the later history showing their repayment of the alleged loans. The advances they made to their corporation to enable it to get started and carry on its business in its early years are not very significant on the issue here. It is more significant that after repaying these early advances the corporation *80 began to have surplus funds which were withdrawn on a continuing basis on the same informal basis as were the withdrawals charged to compensation. The evidence does not indicate any intention to repay the so-called loans until after respondent questioned the bona fides of the loans in June of 1959. The evidence of repayment was that Isaac and Sadie deeded their home to their corporation in January of 1960 when the loan account showed a balance due of around $40,000. The corporation received the home in payment of the balance due in the loan account at a value of $65,000 subject to a $20,000 mortgage. Such evidence rather indicates the lack of intention to repay at the time the withdrawals, labeled as loans, were made. In view of the lack of evidence that bona fide loans were intended at the time of the withdrawals, we hold for respondent on the issue. The second issue involves the deductions for compensation paid to Isaac and Sadie in Docket No. 89914. Sadie admits she should have reported $3,000 which the corporation reported as compensation paid to her. Here again the issue is one of fact with the burden on the petitioners to show that the salaries paid to Isaac and Sadie of $10,000 *81 and $3,000, respectively, were "reasonable" within the meaning of section 162(a)(1) of the Internal Revenue Code of 1954. Botany Worsted Mills v. United States, 278 U.S. 282. Special scrutiny must be given to alleged salaries paid by family corporations to the members of the family who are its officers and sole stockholders. Golden Construction Co. v. Commissioner, 228 F. 2d 637. In cases presenting the salary issue there is often evidence of such factors as the employees' qualifications; the size and complexities of the business; a comparison of salaries paid by comparable businesses; the relation of salaries to gross and net income; and the amount of compensation paid to the particular officers in previous years. J. J. Hart, Inc., 9 T.C. 135. Here, about all we have is the testimony of Isaac as to the nature and extent of the work he and Sadie performed and their salaries for prior years. His testimony was very general. He said he worked almost 24 hours a day performing such services as bookkeeping, sending rent notices, rent collections, typing letters, making out leases, negotiating property purchases and sales and *82 doing minor repairs. He went on to list some thirty more categories of work he performed for the corporation ranging from services in connection with F.H.A. financing to taking care of the pencil sharpeners. And he explained Sadie's services by merely saying: "She assisted me in almost all of these services." He also testified: "I have nobody else on the payroll with the exception of the superintendents in each and every building." Other evidence indicated the building superintendents were each paid around $3,000 or $4,000 a year. There is no showing that the services rendered by Isaac in 1955 were more extensive than services performed in prior or subsequent years. And yet $10,000 was paid to Isaac in 1955 while he drew $8,000 for the five previous years and $8,000 in 1956 and only $7,166 in 1957. The manner in which compensation was merely the subject of withdrawals would be rather conducive to excessive withdrawals in a year when the corporation had a good cash position. [1]
While there is no testimony of salaries *83 of other corporate officers similarly situated, the lack of such comparative testimony would not be fatal to petitioners' position if there was other persuasive testimony to show the reasonableness of the salaries paid. If the officers' salaries were to be compared to real estate management fees prescribed by the Real Estate Board of New York City, they would be grossly excessive. Isaac testified such managing fee is 5 percent of gross rents. The corporation reported gross rentals in the amount of $30,571.08 in 1955. We do not mean to say such a comparison is at all controlling for the corporation had other income from the sale of property and it was expanding. However, there is just nothing in the record to justify the increase in officers' salaries for this one year 1955. In subsequent years when the corporation's business was expanding Isaac's salary was reduced. On the whole record we hold the corporate petitioner failed to sustain its burden of showing the salaries paid its officers were not excessive in the amounts determined by respondent. Decisions will be entered for the respondent. Footnotes
1. The record shows the corporation had an opening cash on hand at the beginning of 1955 in the amount of $4,985.69 and it had $61,412.11 in cash at the end of 1955.↩