Frank Occhipinti and Lady Patricia Occhipinti [1] v. Commissioner. Occhipinti v. Commissioner
Docket No. 5691-65.
United States Tax Court
T.C. Memo 1969-190; 1969 Tax Ct. Memo LEXIS 104; 28 T.C.M. (CCH) 968; T.C.M. (RIA) 69190; September 23, 1969, Filed *104 deQuincy V. Sutton, Greater Miss. Life Bldg., Meridian, Miss., for the petitioners. William O. Lynch and Harold Friedman, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax for 1957 through 1962 as follows: 969 TaxableYear
Deficiencies
[2] Additions toTax Sec.6653(a) Additions to TaxSec. 6651(a)
Total
1957
$ 5,093.92
$ 416.00
$ 1,418.34
$ 6,928.26
1958
80,565.25
4,253.11
20,141.31
104,959.67
1959
35,122.10
1,756.10
36,878.20
1960
40,480.30
2,024.02
42,504.32
1961
4,118.92
205.95
4,324.87
1962 5,107.04
255.35
5,362.39
Total
$170,487.53
$8,910.53
$21,559.65
$200,957.71
Numerous issues have been conceded or settled by the parties. The following issues remain for decision: (1) Whether, under section 1034(a), petitioners are entitled to exclude from gross income gain of $2,450 realized by them from the sale during 1958 of their residence. (2) Whether petitioners erroneously excluded from their gross income, for the years 1957 through 1962, one-third of petitioner Frank Occhipinti's distributive share *105 of the profits of the partnership, Town & Country Motel. This issue turns on whether Santa Occhipinti, petitioner Frank Occhipinti's mother, was a subpartner with him in his interest in the partnership. (3) Whether the proceeds of certain checks issued during 1959 by Motor Hotels of Louisiana, Inc., in the amount of $34,880, and by Jacqueline, Inc., in the amount of $9,750, constitute taxable income to petitioners. (4) Whether the proceeds of a check received by petitioners in 1962 from Motor Hotels of Louisiana, Inc., constitute taxable income to them to the extent of $3,000. (5) Whether petitioners realized taxable income in 1960 in the amount of $2,290, evidenced by an entry on the books of Motor Hotels of Louisiana, Inc., in the account "Due from Officers-Frank Occhipinti." (6) Whether petitioners are entitled under section 162(a) to deductions for unreimbursed "business expenses" claimed for 1957 through 1961. (7) Whether the proceeds of certain checks issued by Town & Country Motel, Inc., during 1957, 1958, and 1959, in the respective amounts of $341.40, $5,136.39, and $1,445.46, constitute taxable income to petitioners. (8) Whether petitioners understated petitioner Frank Occhipinti's *106 distributive share of the profits of Town & Country Motel, a partnership, for 1960, 1961, and 1962. (9) Whether, because of the percentage limitations of section 213, deductions for medical expenses for 1957, 1961, and 1962 are allowable in the amounts claimed by petitioners. (10) Whether petitioners' failure to file timely income tax returns for 1957 and 1958 was due to reasonable cause and not to willful neglect within the meaning of section 6651(a). (11) Whether all or part of the underpayments of income tax due by petitioners for 1957 through 1962 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). General Findings of Fact Petitioners Frank Occhipinti (hereinafter referred to as Frank) and Lady Patricia Occhipinti, husband and wife, were legal residents of New Orleans, Louisiana, at the time their petition was filed. They filed their joint income tax returns for 1957 through 1962 with the district director of internal revenue, New Orleans, Louisiana. Issue 1. Sale of Residence Findings of Fact On June 12, 1958, petitioners sold their residence at 795 Jewel Street, New Orleans, Louisiana (hereinafter old residence), for *107 $36,500. Their cost basis of this residence was $32,150, and the commissions and costs incurred in connection with its sale amounted to $1,900. The gain realized on the sale was $2,450. For several months following the sale of the old residence petitioners lived in Shreveport, Louisiana, where Frank was engaged in supervising the construction of a motel being built by Town & Country Motel, Inc. (hereinafter T. & C. Motel), a corporation in which he owned stock. Upon completion of the construction Frank served as 970 manager of the motel. While in Shreveport petitioners lived in housing leased from Montgomery Realty Co.; the rent on this house was paid by T. & C. Motel. On May 28, 1959, petitioners returned to live in New Orleans and rented and thereafter resided in an apartment at 110 Wren Street. Also on that date Frank entered into a contract for the purchase of another residence, located at 1415 Robert E. Lee Boulevard (hereinafter new residence) for $50,000. The contract provided, among other things, that the purchase was conditioned on Frank's obtaining a "1st Mortgage from Homestead in the amount of $36,000.00, 6%, 25 years." The agreement further provided that "Should purchaser, *108 seller or agent be unable to obtain the homestead loan stipulated above within 20 days from acceptance hereof, this contract shall then become null and void * * *" and recited that "This offer remains binding and irrevocable through May 29, 1959." On July 9, 1959, Frank applied for a loan of $35,000, to be repaid in 20 years at 6 percent interest, to finance part of the purchase price of the new residence. The loan application shows Frank's address as "110 Wren." Petitioners acquired title to the new residence on July 20, 1959, and began using it as their principal residence on or about that date. Opinion Subject to prescribed conditions, section 1034(a) [3] *109 provides for the nonrecognition of gain from the sale of property ("old residence") used by the taxpayer as his principal residence if, within one year before or after the date of such sale, he purchases and uses other property ("new residence") as his principal residence. Respondent contends that petitioners do not qualify for such nonrecognition because they did not purchase and use their new residence as their principal residence within one year of the sale of their old one. The issue is factual. Since the old residence was sold on June 12, 1958, the contract to purchase the new residence, dated May 28, 1959, was within the one-year period prescribed by section 1034(a); but the contract was conditioned on Frank's obtaining a first mortgage from Homestead in the amount of $36,000 at 6 percent interest, to be repaid within 25 years. Failure to obtain such a mortgage within 20 days was to render the contract null and void. Frank submitted an "APPLICATION FOR LOAN" dated July 9, 1959 (more than 20 days after acceptance of the contract of purchase), for $35,000 for *110 20 years at 6 percent interest; this application shows Frank's address as "110 Wren." We were not advised whether this was the first loan application filed by Frank or whether a loan application on the terms stated in the May 28, 1959, agreement had previously been rejected. Although there was testimony that petitioners occupied the new residence prior to July 20, 1959, the date they acquired title thereto, Frank admitted that he did not know when they started using it as their principal residence. Also, there was no evidence as to when petitioners ceased using as their principal residence the apartment at 110 Wren Street. We are compelled to conclude that petitioners neither completed the purchase of the new residence, nor used it as their principal place of residence, within one year of the date of the sale of their old residence. Therefore, they do not qualify for the benefits of the nonrecognition-of-gain provisions of section 1034(a). Issue 2. Subpartnership Findings of Fact From 1947 through 1952 Frank and his brother, Rosario Occhipinti (hereinafter Rosario), owned and operated two motels, one with 10 units and the other with 32 units, both located in the New Orleans area. *111 In 1952 they sold their motels and entered into a partnership, Town & Country Motel (hereinafter Town & Country), with Carlos Marcello and Salvador J. Marcello. Each of the four individuals had a 25 percent interest in the partnership. 971 During 1953, shortly after the formation of Town & Country, the partners constructed, and thereafter operated, a 50-unit motel. In 1956 50 more units were added, and the partnership continued operating the motel until it was sold in 1964. Santa Occhipinti (hereinafter Santa) is the mother of Frank, Rosario, and a third brother, Anthony Occhipinti. She is a widow, and had succeeded to some of her husband's property following his death. On March 22, 1954, Santa withdrew $10,000 from a savings account and deposited it in her checking account. She then gave a check in that amount to Frank. In her income tax returns for the years 1954 through 1962, Santa reported the following amounts of income, which were described in the returns as having been derived from a one-third share of Frank's interest in Town & Country: 1954
$ 1,306.30
1955
2,705.51
1956
2,564.47
1957
7,578.00
1958
9,964.78
1959
6,591.77
1960
4,098.18
1961
720.50
1962
1,117.82
No written agreement was executed *112 relating to a subpartnership interest in Town & Country in the name of Santa. She did not perform any services for the partnership. Nor did she participate in the management or operation of the motel. Opinion Petitioners contend that in 1954 Santa became a subpartner with Frank in his one-fourth interest in Town & Country. In the notice of deficiency respondent determined that Santa was not a subpartner and that, therefore, petitioners were taxable on the full amount of Frank's one-fourth share of Town & Country's income without any diminution for payments to his mother. Petitioners argue that Santa's interest in Town & Country was maintained in accordance with article 2871 of the Louisiana Civil Code, which provides in pertinent part as follows: Every partner may, without the consent of his partners, enter into a partnership with a third person, for the share which he has in the partnership, but he can not, without the consent of his partners, make him a partner in the original partnership, should he even have the administration of it. A subpartnership established pursuant to article 2871 is recognizable for income tax purposes. United States v. Atkins, 191 F. 2d 146 (C.A. 5, 1951), *113 certiorari denied 343 U.S. 941 (1952). However, the distributive share taxable to a subpartner who acquires his interest from a family member may be affected by the provisions of section 704(e), [4] *114 which require the acquiring family member to own a capital interest in, or to have donated capital to, the partnership.
The evidence here fails to convince us that a subpartnership between Santa and Frank was, in fact, created. We do not think Santa owned a capital interest in the partnership, section 704(e)(1), or that she donated capital to it. Sec. 704(e)(2), (3). The lack of a written agreement documenting the alleged transfer of a subpartnership interest to Santa is not alone fatal to petitioners' cause, cf. United States v. Atkins, supra, but the absence of such documentation, in our view, requires other substantial evidence to satisfy petitioners' burden of proof. Such evidence was not presented. Frank testified that in 1954 his mother purchased one-third of his interest in Town & Country *115 "as a silent partner" when she withdrew $10,000 from her savings account turned it over to him. At that time, and until 1956, Town & Country owned and operated a 50-unit motel. The record 972 does not establish any relationship between the $10,000 alleged to have been invested in Frank's interest by Santa and the initial cost or the value of this motel, i.e., that her investment approximated one-third of the value of Frank's one-fourth interest in the business. In 1956 50 units were added to the motel. The record does not show that Santa made any contribution to the capital required for doubling the size of the motel. If she had been a subpartner prior to 1956, and remained so after the business was expanded, she would have been called upon to make an additional capital contribution. Furthermore, there was no showing that Santa actually participated in Frank's onefourth share of the business profits to the extent of one-third thereof. Frank testified that Santa received "a weekly check from Town and Country, and she hasn't missed a week since she had ownership in Town and Country." As to the amount of such checks, he testified that "when we first started she was drawing around $200 *116 a month, then, at different times different amounts. But no relationship was shown between the amounts which she received and the earnings of Town & Country, and no record was kept of the amount to which she was allegedly entitled under the subpartnership arrangement. The motel was sold in 1964, and Frank testified that under the terms of the sale he received payments of $500 [5] per month, which he gave to his mother. However, while she continued to receive weekly checks from Town & Country, there is no showing that such payments represented part of the proceeds from the sale of the motel. In explaining the informality in creating the alleged subpartnership, Frank and petitioners' other witnesses placed much emphasis upon the close relationship within the Occhipinti family. We have no doubt that such a close relationship existed. Indeed, we think that Frank agreed to, and did, make funds available to Santa monthly for her support after receiving the $10,000 in March 1954. To lessen *117 his tax burden he arranged for Santa to file tax returns showing that she had received one-third of his one-fourth interest in the partnership. We believe a fair interpretation of the record is that Frank gave her this money, not as a subpartner, but rather in order to discharge his duty as her son to care for her support. Cf. Commissioner v. Culbertson, 337 U.S. 733 (1949); Burnet v. Leininger, 285 U.S. 136 (1932). Issue 3. Checks from Motor Hotels of Louisiana, Inc., and Jacqueline, Inc., in 1959 Findings of Fact During 1959 the following checks were issued to Frank by Motor Hotels of Louisiana, Inc. (hereinafter Motor Hotels), and were charged on that corporation's books to the accounts indicated: CheckNumber
Date ofCheck
Amount
Account Charged
* 180
1-14-59
$ 5,000
Due from Officers
13015
9- 2-59
9,500
Due from Officers
889
9- 2-59
19,750
Due from Officers
794
9- 8-59
350
Repairs & Maintenance
864
10- 1-59 280
Legal & Auditing
Total
$34,880 Frank was a stockholder of Motor Hotels. In addition to the above checks, Jacqueline, *118 Inc. (hereinafter Jacqueline), issued to Frank its check no. 888, dated September 2, 1959, in the amount of $9,750, drawn on its account with the Bank of Louisiana. Jacqueline charged the check on its corporate books to an account "Due from Officers." Petitioners included the proceeds of none of these checks in their taxable income; in the notice of deficiency respondent determined that these proceeds represented "Other income" of petitioners for 1959. 973 Check nos. 888 of Jacqueline and 889 and 13015 of Motor Hotels, totaling $39,000, all certified, were issued to Frank in connection with efforts to reorganize and acquire the stock and assets of The LeBaron Corporation (hereinafter LeBaron), a Louisiana corporation which was then going through bankruptcy proceedings in the United States District Court for the Eastern District of Louisiana. On July 31, 1959, Frank and Rosario (also known as Roy) filed with Albert G. Reynolds, Trustee, a plan for the reorganization of LeBaron, in which they proposed to pay a total of $690,000 for that corporation's stock and assets. Of the purchase price, $340,000 was to be invested by them and $350,000 was to be borrowed from an insurance company. *119 The offer called for $69,000 to be deposited with the trustee within 10 days after the approval of the plan by the district court. On September 4, 1959, Judge Herbert W. Christenberry approved the proposal of Frank and Rosario for the purchase of LeBaron's assets and stock. The order of approval commanded them to deposit $69,000 with the trustee within 48 hours. By order dated October 7, 1959, the plan was confirmed. Title to the LeBaron real estate acquired in the reorganization was ultimately vested in Jacqueline, and the motel operations were carried on by Motor Hotels. Two days prior to the issuance of the order approving the plan, on September 2, 1959, Frank S. Rockefort, Jr., also a stockholder in Motor Hotels, deposited $30,000 in an account at the National Bank of Louisiana and then obtained a certified check in that amount. This $30,000 check and the three checks dated September 2, 1959, totaling $39,000, described above, were then used to obtain a cashier's check for $69,000 payable to Albert G. Reynolds, Trustee. The cashier's check was also dated September 2, 1959. On the books of Motor Hotels the account "Due from Officers" was a suspense account used to record withdrawals *120 by officers, or occasionally by Town & Country, until the withdrawals could be properly classified. The balance sheet accompanying the tax return of Motor Hotels for the fiscal year ending April 30, 1960, lists an asset of $29,250 (the total amount of check nos. 889 and 13015) described as "Due from Officers." No such asset appears on the balance sheet accompanying the return for the fiscal year ending April 30, 1961, but an item "Due from LeBaron Corp.," in the amount of $41,250, appears thereon. These balance sheet entries reflect the transfer of check nos. 889 and 13015 from the account "Due from Officers" to an account "Loans Receivable-LeBaron." Check no. 888 was similarly handled on the books and balance sheets of Jacqueline, although not transferred to an account reflecting a liability from LeBaron until some time in its fiscal year ending October 31, 1963. Opinion Respondent contends that the $39,000 represented by the three checks, two from Motor Hotels and one from Jacqueline, were dividends to petitioners, section 316 (a), [6] arguing that the evidence shows no intention on the part of petitioners to repay the amounts of the purported loans. Respondent maintains that petitioners *121 used these funds to acquire a stock interest in LeBaron and are therefore liable for dividend income. The issue raised by this argument is a purely factual one. Wiese v. Commissioner, 93 F. 2d 921, 923 (C.A. 8, 1938), affirming 35 B.T.A. 701 (1937), certiorari denied 304 U.S. 562 (1938); William C. Baird, 25 T.C. 387, 393 (1955). We approach this issue bearing in mind that Frank, his brother, and their close associate, Carlos Marcello, were in control of Jacqueline and *122 Motor Hotels, [7] and thus were in a position to manipulate the affairs of those corporations so as to obtain the permanent use of corporate funds without a formal declaration of dividends. This factor invites our careful scrutiny. Elliott J. Roschuni, 29 T.C. 1193, 1202 (1958). We have concluded that 974 the objective evidence will not support petitioners' contention that the advances were loans. [8] While it is true that the books of both corporations and the balance sheets attached to their returns describe the advances as loans, there is no evidence, other than these self-serving entries, that Frank intended to repay the amounts advanced. No notes evidencing the alleged debts were ever *123 executed; no repayment schedules were agreed upon and, indeed, no repayments were made on the alleged loans; and no interest was paid by Frank. Finally, in subsequent years the books of both corporations reflect transfers of the "receivables" from Frank's accounts to other accounts. Jacqueline's tax return for the fiscal year ending October 31, 1959, its first year of operation, shows earned suplus of only $3,079.94; the earned surplus of Motor Hotels shown on its return for the fiscal year ending April 30, 1960, is only $21,976.76. Since there is no indication in the record that any adjustments need be made to these amounts to compute these corporations' respective earnings and profits, it follows that neither of the two corporations had sufficient earnings and profits to cover the full amount of the advances. Therefore, only part of the proceeds of the checks are taxable to petitioners as dividends. Secs. 316(a), 301(c)(1). [9] *124 Petitioners offered no evidence to show the character of check nos. 794 and 864. Accordingly, for lack of proof, we sustain respondent's determination that their proceeds constitute taxable income to petitioners. As for check no. 180, petitioners contend that Frank's share of the check, $5,000, was part of his compensation of $8,000 reported in his return. [10] But there is nothing in the record to support this argument and no explanation of why five-eighths of his total salary would be paid in a single disbursement. Again, for lack of proof, we sustain respondent's determination as to the taxability to petitioners of $5,000 of the proceeds of check no. 180. Issue 4. Check from Motor Hotels in 1962 Findings of Fact On August 21, 1962, Motor Hotels issued check no. 3941, in the amount of $6,000, payable to Frank and Rosario. The check was endorsed by both of them. Motor Hotels charged $3,000 *125 of the check to its account entitled "Due from Officers-Frank Occhipinti." In the notice of deficiency respondent determined that this amount was taxable income to petitioners for 1962. Opinion Petitioners argue that the mere charge of the $3,000 item to the suspense account in Frank's name is not a sufficient basis for taxing that amount to them. However, they offer no explanation of the fact that the check was payable to Frank and Rosario and endorsed by them - certainly evidence of distribution by Motor Hotels to them. Due to this failure of petitioners to satisfy their burden of proving that the payment was not taxable income, respondent's determination must be sustained. Issue 5. Item $2,290 from Motor Hotels in 1960 Findings of Fact During the month of July 1960 a charge in the amount of $2,290 was entered on the books of Motor Hotels to the account "Due from Officers-Frank Occhipinti." A similar charge was made to Rosario's account. In the notice of deficiency respondent determined that the charge of $2,290 constituted "Other income" to petitioners for 1960. Opinion No evidence was offered to show that this $2,290 was not taxable income, except general testimony by Frank that *126 the moneys did not inure to his personal benefit but were used for the purposes of the corporation. This general testimony does not convince us that respondent's determination was erroneous. Accordingly, we sustain that 975 determination. For a discussion of the similar charge to Rosario, see our conclusions as to Issue 5 in Rosario Occhipinti, T.C. Memo. 1969-191, decided this day. Issue 6. Deductions for Unreimbursed Business Expenses Findings of Fact Petitioners claimed the following deductions as business expenses for the years indicated, all of which were disallowed in the deficiency notice: Item
1957
1958
1959
1960
1961
Gas & Oil
$ 225.00
$240.00
$ 300.00
$ 245.00
$ 281.65
Insurance
75.00
75.00
75.00
125.25
125.25
Repairs & Maint.
147.25
Depreciation
250.00
250.00
500.00
500.00
500.00
Travel & Entert.
360.00
360.00
360.00
300.00
Interest
89.75
Travel & Misc.
165.00
Total
$1,057.25
$925.00
$1,324.75
$1,170.25
$1,071.90 All of these expenses relate to the operation of automobiles owned by Frank and used by him in connection with the business of the partnership Town & Country. Town & Country did not own an automobile during much of the period in question, and Frank consequently was required to use his own automobiles *127 in transporting guests of the motel to and from the local airport and in running errands related to the motel's operation. He also used his automobiles in entertaining customers and businessmen and in looking after his other investments. In addition, he incurred such incidental expenses as parking lot fees, repairs, etc. It was the policy of Town & Country to reimburse its partners for expenses incurred in connection with its business. Opinion Petitioners failed to establish either the bases, rates of depreciation, or salvage values of the automobiles with respect to which depreciation was taken. For this lack of proof, respondent's disallowance of the depreciation deductions must be sustained. Respondent's determination as to the remaining deductions must likewise be sustained. The claimed expenses were incurred by Frank in carrying on the business of Town & Country, and were expenses of the partnership, not of Frank individually. It is well settled that a partner may not deduct business expenses of the partnership on his personal return unless there is an agreement among the partners that such expenses shall be borne by him out of his individual funds, Robert J. Wallendal, 31 T.C. 1249, 1252 (1959); *128 yet petitioners produced no evidence of any such agreement. Furthermore, the claimed expenses were reimbursable by Town & Country, but Frank evidently failed to seek reimbursement therefor. Cf. Coplon v. Commissioner, 277 F. 2d 534 (C.A. 6, 1960), affirming per curiam a Memorandum Opinion of this Court. For these reasons, we conclude that the disputed deductions must be disallowed. Issue 7. Checks from T. & C. Motel Findings of Fact During 1957, 1958, and 1959, the following checks were issued by the corporation, T. & C. Motel: CheckNumber
Date ofCheck
Payee
Amount ofCheck
Account Charged on Payor's Books
1957
7-30-57
Frank Occhipinti
$ 56.40
Travel & Entert.
8- 9-57
Frank Occhipinti
110.00
Misc. Expense
16
8-22-57
Frank Occhipinti
85.00
Misc. Expense
54
8-30-57
Frank Occhipinti 90.00
Misc. Expense
Total
$ 341.40
1958
1366
7- 3-58
Montgomery Realty (Rent for Frank Occhipinti)
$ 240.00
Unknown
371
8- 1-58
Frank Occhipinti
500.00
Unknown
486
8-15-58
Town & Country - New Orleans
766.00
Unknown
687
9- 2-58
Cash (Endorsed by Frank Occhipinti)
85.00
Unknown
899
9-25-58
Frank Occhipinti
150.00
Unknown
997
10- 6-58
Frank Occhipinti
750.00
Unknown
1010
10- 6-58
Frank Occhipinti
1,130.04
Unknown
1119
10-17-58
Frank Occhipinti
235.00
Unknown
1238
10-31-58
Frank Occhipinti
500.00
Unknown
1443
11-28-58
Frank Occhipinti
200.00
Unknown
1624
12-24-58
Frank Occhipinti
250.00
Unknown
1667
12-29-58
Frank Occhipinti 330.35
Unknown
Total
$5,136.39
1959
1833
1-16-59
Montgomery Realty (Rent)
$ 140.00
Unknown
1969
2- 6-59
Frank Occhipinti
300.00
Unknown
2082
2-21-59
Frank Occhipinti
60.00
Unknown
3- 5-59
Frank Occhipinti
130.60
Unknown
2178
3- 6-59
Frank Occhipinti
250.00
Unknown
3-10-59
Frank Occhipinti
141.36
Unknown
2453
4-18-59
Frank Occhipinti
219.60
Unknown
2748
6-12-59
A. W. Dunn Trans- fer & Storage
* 203.90
Unknown
Total
$1,445.46
*129 976 During 1957 Frank spent about four months in Shreveport supervising the construction of a motel for T. & C. Motel. Upon completion of the construction he managed the motel during parts of 1958 and 1959. He received no salary for these services, but T. & C. Motel had agreed to reimburse him for the expenses he incurred while carrying out his assignments. During the remainder of these three years, not spent in Shreveport, he worked for Town & Country, the partnership which operated a motel in Metairie, Louisiana. While working in Shreveport Frank incurred expenses for transportation between Shreveport and New Orleans, for entertaining potential customers of the motel, and for meals and lodging. T. & C. Motel initially did not have an automobile, and Frank, while serving as manager of the motel in 1958, sold a Dodge automobile to it. Payment was made to him for the automobile through check nos. 997 and 1010, issued on October 6, 1958, in the respective amounts of $750 and $1,130.04. During the time Frank was in Shreveport, T. & C. Motel paid rent on a house used by him and his family as their residence. Finally, when Frank moved to New Orleans *130 from Shreveport in late May 1959, he sold a stove and refrigerator to the corporation. Petitioners included the proceeds of none of these checks in their taxable income; in the notice of deficiency respondent determined that these proceeds represented "Other income" of petitioners for the respective years in which the checks were issued. Petitioners received taxable income from these checks in the amounts of $166.40 for 1957, $1,490.35 for 1958, and $1,045.46 for 1959. Opinion Petitioners contend that the rental payments to Montgomery Realty by check no. 1366, dated July 3, 1958, in the amount of $240 and check no. 1833, dated January 16, 1959, in the amount of $140, were nontaxable because Frank and his family lived in Shreveport for the "convenience" of his "employer," T. & C. Motel, apparently 977 relying upon section 119. [11] But section 119 permits exclusion of the value of lodging furnished by an employer only if "the employee is required to accept such lodging on the business premises of his employer as a condition of his employment." Quite obviously, the record does not show that Frank was required to accept the lodging in question, that such lodging was on the business premises *131 of his employer, or that occupying the residence was a condition of his employment. Accordingly, the proceeds of these two checks constitute taxable income to petitioners. Check no. 486, dated August 15, 1958, payable to "Town & Country-New Orleans," was in the amount of $766. There is no evidence whatever to indicate that the proceeds of this check, payable to a partnership of which Frank was a member, were received by him. The stipulation, buttressed by Frank's testimony, is sufficient to show that the amount of this check should not be included in his gross income. Petitioners contend that certain of the checks were the results of T. & C. Motel's purchase of an automobile, a stove, and *132 a refrigerator. We have found as a fact that check nos. 997 and 1010, issued on October 6, 1958, in the respective amounts of $750 and $1,130.04, did represent payment by T. & C. Motel to Frank for a Dodge automobile. Accordingly, petitioners' contention that these payments are not includable in their gross income is sustained. However, petitioners' contention regarding the stove and refrigerator must be rejected. These items were sold to the corporation in late May 1959, but the only check issued after that date was no. 2748, dated June 12, 1959, payable to A. W. Dunn Transfer & Storage. Thus, none of the checks in issue represented payment by T. & C. Motel for the stove and refrigerator. As to the remaining items, we are satisfied that a substantial part of them represents reimbursement for business expenses which Frank incurred while traveling or in carrying out assignments of his employer which did not personally benefit him. Using our best judgment in the light of the evidence presented, we hold that petitioners received nontaxable reimbursements for deductible expenses in the amounts of $175 in 1957, $1,000 in 1958, and $400 in 1959. Cohan v. Commissioner, 39 F. 2d 540 (C.A. *133 2, 1930). Issue 8. Income from Town & Country Opinion Our findings and conclusions on this issue in Salvador J. Marcello, T.C. Memo, 1969-189, decided this day, are incorporated herein by this reference. In our opinion in Salvador J. Marcello, supra, we reserved for decision the question whether Frank is entitled, in his individual capacity, to deductions for interest paid by Town & Country on a $210,000 note given to the Krauss Company Employees Pension Fund (hereinafter Pension Fund). Since Frank owned a 25 percent interest in Town & Country; since 25 percent of the proceeds of the Pension Fund loan were used in the Jacqueline venture on his behalf; and since his distributive share of Town & Country's partnership income was reduced by 25 percent of the amounts paid by Town & Country as interest on the Pension Fund loan, petitioners are entitled to a deduction of 25 percent of the interest payments. [12] *134 Allowance of such deductions will not cause any distortion of taxable income. Cf. Marcello v. Commissioner, 380 F. 2d 499, 503 fn. 10 (C.A. 5, 1967), modifying a Memorandum Opinion of this Court. Issue 9. Medical Expense Deduction Petitioners claimed medical expense deductions for 1957, 1961, and 1962. The percentage limitations prescribed by section 213, keyed to adjusted gross income, will require adjustments in the Rule 50 computation to conform the deduction with our foregoing conclusions and the stipulations and concessions of the parties. 978 Issue 10. Additions to Tax under Section 6651(a) Findings of Fact Petitioners were granted an extension of time to June 15, 1958 within which to file their joint return for the calendar year 1957. No other extension of time was granted them for filing their 1957 return. The joint return of petitioners for 1957 was received by the Internal Revenue Service on August 20, 1958. Petitioners' joint return for the calendar year 1958 was due to be filed not later than April 15, 1959. No extensions of time *135 were granted them for filing their 1958 return. The joint return of petitioners for 1958 was received by the Internal Revenue Service on September 21, 1959. In the notice of deficiency respondent determined that petitioners were liable for the delinquency penalty imposed by section 6651(a) for 1957 and 1958. Opinion Section 6651(a) [13] *136 calls for the imposition of an addition to tax in the case of failure to file an income tax return within the prescribed time "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." The burden rests with the taxpayer to make the showing specified in the statute as to the reason for the delinquency if the addition to tax is to be avoided. Petitioners offered no evidence as to why their 1957 and 1958 returns were delinquent. We must, therefore, sustain respondent's determination of the additions to tax under section 6651(a). Issue 11. Additions to Tax under Section 6653(a) Opinion Respondent determined additions to tax under section 6653(a) [14] for each of the years 1957 through 1962. That section imposes an addition to tax if any part of any underpayment is "due to negligence or intentional disregard of rules and regulations (but without intent to defraud)." Petitioners bear the burden to show that no negligence or intentional disregard of rules and regulations occurred. See Marcello v. Commissioner, supra at 505-507. Petitioners offered no evidence to show that their underpayments for the years in issue were not attributable to negligence. Furthermore, Frank was an active partner in Town & Country during all the years in issue. For the reasons stated in Salvador J. Marcello, supra, we hold that the negligence of Town & Country in filing its returns is imputed to Frank. Finally, the lack of adequate recordkeeping contributed *137 to the underpayments discussed in Issues 1, 2, 3, 4, 5, 6, and 7 of this Opinion. Imposition of the section 6653(a) additions to tax is sustained. Decision will be entered under Rule 50. Footnotes
1. This case was tried in consolidation with Carlos Marcello, docket No. 3532-64; Anthony and Jeannine Marcello, docket No. 3533-64; Jacqueline Marcello, docket No. 3534-64; Carlos and Jacqueline Marcello, docket Nos. 3744-65 and 2908-66; Salvador J. and Florence Marcello, docket Nos. 3535-64 and 3981-65; Joseph C. and Barbara Marcello, docket Nos. 3743-65 and 2907-66; Rosario and Julia Occhipinti, docket No. 5760-65; Churchill Farms, Inc., docket No. 6307-66; and Bayou Verret Land Co., Inc., docket No. 6308-66. The present case is severed for a separate opinion.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
3. SEC. 1034. SALE OR EXCHANGE OF RESIDENCE. (a) Nonrecognition of Gain. - If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.↩
4. SEC. 704. PARTNER'S DISTRIBUTIVE SHARE. * * * (e) Family Partnerships. - (1) Recognition of interest created by purchase or gift. - A person shall be recognized as a partner for purposes of this subtitle if he owns a capital interest in a partnership in which capital is a material income-producing factor, whether or not such interest was derived by purchase or gift from any other person. (2) Distributive share of donee includible in gross income. - In the case of any partnership interest created by gift, the distributive share of the donee under the partnership agreement shall be includible in his gross income, except to the extent that such share is determined without allowance of reasonable compensation for services rendered to the partnership by the donor, and except to the extent that the portion of such share attributable to donated capital is proportionately greater than the share of the donor attributable to the donor's capital. * * * (3) Purchase of interest by member of family. - For purposes of this section, an interest purchased by one member of a family from another shall be considered to be created by gift from the seller, and the fair market value of the purchased interest shall be considered to be donated capital. The "family" of any individual shall include only his spouse, ancestors, and lineal descendants, and any trusts for the primary benefit of such persons.↩
5. At one point Frank testified that the note received on the sale of the motel was payable to him at the rate of $400 per month. The record is not clear as to whether it was in fact $400 or $500 per month.↩
*. This check, which was in the total amount of $10,000, was payable to Rosario. However, $5,000 was charged to Frank and the other $5,000 to Rosario in their accounts "Due from Officers."↩
6. SEC. 316. DIVIDEND DEFINED. (a) General Rule. - For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders - (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. * * *↩
7. For facts relating to the ownership of the stock of Jacqueline, see our Findings in Issue 2 in Salvador J. Marcello, T.C. Memo. 1969-189↩, decided this day. The same group owned Motor Hotels. 8. In reaching this conclusion we express no opinion as to the character of these funds when used in the purchase of the assets of LeBaron - that is, whether they were loans or capital contributions to Legaron, or were uased merely to acquire LeBaron's stock on behalf of the individuals engaged in that undertaking.↩
9. Consistent with our findings in Salvador J. Marcello, supra, Frank's basis in his Jacqueline stock is $75,000, i.e., one-fourth of the $300,000 contributed to Jacqueline's capital by the Marcello-Occhipinti group. In the absence of evidence to the contrary, we must conclude that Frank's basis in the Motor Hotels stock is zero.
10. Inconsistently, petitioners in Rosario Occhipinti, T.C. MEMo. 1969-191, decided this day, argued that the portion of this check charged to Rosario was used to replenish an account for cashing checks of guests of Motor Hotels.↩
*. To move Frank Occipinti to New Orleans.↩
11. SEC. 119. MEALS OR LODGING FURNISHED FOR THE CONVENIENCE OF THE EMPLOYER. There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if - (1) in the case of meals, the meals are furnished on the business premises of the employer, or (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment. * * *↩
12. Town & Country kept its records and filed its partnership returns on a fiscal year basis, ending January 31, while petitioners reported on a calendar year basis. The note to the Pension Fund being payable in equal monthly installments, petitioners' interest deduction for 1969 is 1/4 X 11/12 X $12,720.84; for 1961 it is 1/4 X 1/12 X $12,720.84 plus 1/4 X 11/12 X $7,705.83; and for 1962 it is 1/4 X 1/12 X $7,705.83.
13. SEC. 6651. FAILURE TO FILE TAX RETURN. (a) Addition to the Tax. - In the case of failure to file any return required under authority of subchapter A of chapter 61 * * *, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.
14. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩